TIMOTHY W. SNIDER, OSB No. 034577
timothy.snider@stoel.com
JAMES A. KILCUP, OSB No. 173891
james.kilcup@stoel.com
KATE S. SHEPHERD, OSB No. 224891
kate.shepherd@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380

KEVIN S. SCHWARTZ, *pro hac vice* forthcoming
kschwartz@wlrk.com
NOAH B. YAVITZ, *pro hac vice* forthcoming
nbyavitz@wlrk.com
ADAM M. GOGOLAK, *pro hac vice* forthcoming
amgogolak@wlrk.com
SIJIN CHOI, *pro hac vice* forthcoming
schoi@wlrk.com
JULIA M. BRUCE, *pro hac vice* forthcoming
jmbruce@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone: 212.403.1000

*Attorneys for Defendants Coinbase, Inc. and Coinbase Global, Inc.*

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| THE STATE OF OREGON, ex rel, DAN RAYFIELD, Attorney General for the STATE OF OREGON, <br><br> Plaintiff, <br><br> v. <br><br> COINBASE, INC. and COINBASE GLOBAL, INC., <br><br> Defendants. | Case No.: 3:25-cv-00952 <br><br> **NOTICE OF REMOVAL OF ACTION** <br><br> (Multnomah County Circuit Court Case No.: 25CV24235) |

Page 1 –   NOTICE OF REMOVAL OF ACTION

Coinbase Global, Inc. and its subsidiary Coinbase, Inc. (together, "Coinbase"), by their counsel, file this Notice of Removal pursuant to 28 U.S.C. §§ 1331, 1441, 1442, and 1446, removing the captioned action from the Circuit Court of the State of Oregon for the County of Multnomah to the United States District Court for the District of Oregon, and averring as follows:

## INTRODUCTION

1. This lawsuit is a regulatory land grab. Dissatisfied with the federal government's recent enforcement decisions, Oregon's new Attorney General has set out to dictate the future of digital assets and the nationwide platforms on which they trade — on his chosen terms, timing, and turf. So he has targeted Coinbase, the nation's largest digital-asset market, contending that it participates in the offer and sale of unregistered securities in Oregon through the operation of a trading platform used by millions of customers across the country. The action is not only wrong on the law, but also exceeds the Attorney General's statutory authority, violates the Supremacy Clause, upends established principles of due process, and threatens to mire a multi-trillion-dollar industry in a patchwork, state-by-state regulatory framework. Most relevant here, the Attorney General's attempt to invade the province of federal law belongs in federal court.

2. Federal policymakers have grappled for years with how to apply longstanding federal statutes and regulations to novel digital-asset technologies. In 2015, the Commodity Futures Trading Commission ("CFTC") classified a range of popular digital assets as commodities and began exercising regulatory authority over crypto futures, options, and swaps.[1] Two years later, the Securities and Exchange Commission ("SEC") began issuing public guidance on when

---

[1] *In the Matter of Coinflip, Inc., d/b/a Derivabit, and Francisco Riordan*, CFTC Docket No. 15-29 (Sept. 17, 2015), https://tinyurl.com/y7389pbr; CME Group, *CME Group Self-Certifies Bitcoin Futures to Launch Dec. 18* (Dec. 1, 2017), https://tinyurl.com/ez9xwb55.

Page 2 –   NOTICE OF REMOVAL OF ACTION

digital-asset transactions might be subject to regulation as securities.[2] Congress, meanwhile, debated legislation to provide a customized framework to govern digital-asset transactions.[3]

3.     Coinbase invested heavily in efforts to comply with this evolving federal landscape, including by developing procedures to identify and exclude from listing on its platform any digital assets that might be deemed securities under the regulatory guidance. These efforts were validated in April 2021, when the SEC allowed Coinbase to go public — a determination that followed a thorough review of the company's business, including its trading platform, and that necessarily reflected the government's consideration of "the public interest and the protection of investors," 15 U.S.C. § 77h(a). Not once during this period, as Coinbase grew into the preeminent U.S. digital-asset trading platform, did the SEC, the CFTC, or any other federal regulator say that Coinbase participated in the offer or sale of unregistered securities.

4.     Oregon nodded along, offering nary a hint that it believed the company's core business violated state law. To the contrary, Oregon publicly declared that cryptoassets were "*not* regulated . . . by the State of Oregon," "similar to . . . gold."[4] And through the venture capital investments of its public employee retirement fund, Oregon provided early financial backing for

---

[2]     *See* SEC, *Report of Investigation Pursuant to Section 21(a) of the Securities Exchange Act of 1934: The DAO*, Release No. 81207 (July 25, 2017), https://tinyurl.com/2cpax2b4; William Hinman, SEC Dir. Div. of Corp. Fin., *Digital Asset Transactions: When Howey Met Gary (Plastic)* (June 14, 2018), https://tinyurl.com/9k6hbh3m; SEC FinHub, *Framework for "Investment Contract" Analysis of Digital Assets* (Apr. 3, 2019), https://tinyurl.com/2w8u7t6j.

[3]     *See, e.g.*, U.S. Virtual Currency Market and Regulatory Competitiveness Act of 2019, H.R. 923, 116th Cong. (2019), https://tinyurl.com/3hscvaj2; Crypto-Currency Act of 2020, H.R. 6154, 116th Cong. (2020), https://tinyurl.com/589kheax; Eliminate Barriers to Innovation Act of 2021, H.R. 1602, 117th Cong. (2021), https://tinyurl.com/2mx3mt8m; Token Taxonomy Act of 2021, H.R. 1628, 117th Cong. (2021), https://tinyurl.com/bezac866; Digital Asset Market Structure and Investor Protection Act, H.R. 4741, 117th Cong. (2021), https://tinyurl.com/yck7dk7j.

[4]     *E.g.*, Oregon Div. of Fin. Reg., *Cryptocurrency* (Oct. 12, 2018) (emphasis added), https://tinyurl.com/chx49csm.

Page 3 –   NOTICE OF REMOVAL OF ACTION

Coinbase and reaped bountiful rewards — earning hundreds of millions of dollars from its investment when Coinbase went public.

5.  Then the SEC abruptly pivoted. In June 2023, as part of a blunderbuss enforcement sweep, the SEC brought an action accusing Coinbase of failing to register as a national securities exchange under the Securities Exchange Act of 1934 ("Exchange Act"). The SEC claimed that 12 tokens trading on Coinbase's platform were "securities" under the Exchange Act — even though half had already been available to its customers when the SEC had greenlit its public listing.

6.  The SEC's ad hoc crypto enforcement campaign was widely criticized, even among federal regulators. As one SEC commissioner recognized, in a dissent to the crackdown, "[u]sing enforcement actions to tell people what the law is in an emerging industry is not an efficient or fair way of regulating."[5] A CFTC commissioner likewise decried that "[m]ajor questions are best addressed through a transparent process that engages the public to develop appropriate policy with expert input [and] [r]egulatory clarity comes from being out in the open, not in the dark."[6] And the U.S. Court of Appeals for the Third Circuit held that the SEC's perfunctory refusal to engage in notice-and-comment rulemaking on the regulation of digital assets was arbitrary and capricious, in violation of federal statute. *Coinbase, Inc.* v. *SEC*, 126 F.4th 175, 202-03 (3d Cir. 2025). As Judge Bibas noted in an extensive concurring opinion, the SEC's "old regulations fit poorly with this new technology, and its enforcement strategy raises constitutional notice concerns." *Id.* at 204. The "SEC repeatedly sues crypto companies for not complying with the law," he observed, "yet it will not tell them how to comply." *Id.* at 204, 213.

---

[5] SEC Comm'r Hester M. Peirce, *Kraken Down*: *Statement on SEC* v. *Payward Ventures, Inc., et al.* (Feb. 9, 2023), https://tinyurl.com/2mwnuppr.

[6] CFTC Comm'r Caroline D. Pham, *Statement on SEC* v. *Wahi* (Jul. 21, 2022), https://tinyurl.com/52zr5dfu.

7.      The SEC soon abandoned its misguided experiment in regulation-by-enforcement. In early 2025, the SEC dismissed its action against Coinbase, with prejudice. Acknowledging that its enforcement dragnet had created "confusion about what is legal"[7] and had "evaded sound regulatory practice,"[8] the agency launched a task force charged with developing a comprehensive and clear federal regulatory framework for digital assets. The SEC Chair has "directed Commission staff across [its] policy Divisions to begin drafting rule proposals related to crypto,"[9] and staff have already issued a series of guidance statements addressing questions about digital assets under federal law.[10] The CFTC has partnered in this initiative, agreeing that "lawfare from multiple federal agencies against innovators in the digital asset space has created unfairness and uncertainty that [] undermined trust in the regulatory process and impeded American competitiveness."[11]

8.      Congress, too, has redoubled its efforts to develop a tailored framework to govern digital assets. In 2024, the U.S. House of Representatives passed legislation proposing functional federal requirements for digital-asset markets. And just last week, the House released an updated,

---

[7]     SEC, *SEC Crypto 2.0: Acting Chairman Uyeda Announces Formation of New Crypto Task Force* (Jan. 21, 2025), https://tinyurl.com/e5fekk55; *see also* SEC Comm'r Hester M. Peirce, *The Journey Begins* (Feb. 4, 2025) ("[T]he Commission's handling of crypto has been marked by legal imprecision and commercial impracticality."), https://tinyurl.com/36vd3ykx.

[8]     SEC Comm'r Hester M. Peirce, *New Paradigm: Remarks at SEC Speaks* (May 19, 2025), https://tinyurl.com/yj8nkm3v.

[9]     SEC Chair Paul S. Atkins, *Prepared Remarks Before SEC Speaks* (May 19, 2025), https://tinyurl.com/ywrkctnv.

[10]    *E.g.*, SEC, Division of Corporation Finance, *Statement on Stablecoins* (Apr. 4, 2025), https://tinyurl.com/bdh3uskt; SEC, Division of Corporation Finance, *Statement on Certain Protocol Staking Activities* (May 29, 2025), https://tinyurl.com/33jj4t5n.

[11]    CFTC, *Acting Chairman Pham Lauds DOJ Policy Ending Regulation by Prosecution of Digital Assets Industry and Directs CFTC Staff to Comply with Executive Orders*, Release No. 9063-25 (Apr. 8, 2025), https://tinyurl.com/bdcmcsjf.

bipartisan draft digital-asset market structure bill.[12] The draft legislation reaffirms that digital assets trading on secondary markets like Coinbase's are not securities, and that digital-asset platforms like Coinbase are to be largely regulated by the CFTC.

9. Oregon's Attorney General apparently does not agree with the federal government's decision to prioritize comprehensive policymaking and rulemaking over drive-by enforcement of the Exchange Act. And so he has taken matters into his own hands. On April 16, 2025, the Attorney General informed Coinbase that he planned to sue within 48 hours. Coinbase sought to meet with the Attorney General to engage for the first time; he refused.

10. On April 18, the Attorney General commenced this action, naming Coinbase, Inc. and its corporate parent Coinbase Global, Inc. as defendants. The Complaint alleges that transactions in 31 digital assets traded on Coinbase's platform are "investment contracts" and that Coinbase therefore offers and sells, or aids and abets the offer and sale of, unregistered securities — largely parroting the allegations made in now-dismissed SEC complaints. It seeks a $20,000 fine per violation, disgorgement of profits, and an injunction against any future sales of the targeted assets in Oregon.

11. In announcing this action, the Attorney General touted it as a bid to "fill" a supposed "enforcement vacuum being left by federal regulators who are giving up under the new administration and abandoning [] important cases."[13] The Attorney General's attempt to weaponize state law to regulate nationwide digital-asset markets flies in the face of the constructive federal efforts to establish uniform rules for the crypto industry. Subjecting interstate platforms to

---

[12] Digital Asset Market Clarity Act of 2025, H.R. 3633, 119th Cong. (2025), https://tinyurl.com/8v3hw9jn.

[13] Or. Dep't of Just., *Oregon Attorney General Rayfield Sues Coinbase for Promoting and Selling High-Risk Investments* (Apr. 18, 2025), https://tinyurl.com/5fmerby4.

a hodgepodge of state regulation would undermine innovation and impede Oregonians and other U.S. consumers from leveraging the benefits of digital-asset technologies. Worse yet, the Attorney General does not even have authority to bring this action. Oregon-based securities transactions are generally regulated by the Division of Financial Regulation, *not* the Attorney General. The Attorney General nonetheless seeks to stretch his limited enforcement authority beyond the breaking point to install himself as the commissar of crypto for Oregon and beyond.

12. Not surprisingly, this copycat case suffers from all of the substantive flaws of the SEC's enforcement action, including that Oregon does not (and cannot) state a valid claim that transactions on Coinbase's secondary-market platform are "investment contracts." And the Attorney General's claims are unconstitutional. Coinbase has been operating since 2012 and went public in 2021, yet no Oregon regulator has ever before identified any of the assets listed on Coinbase's platform as "securities." Just the opposite: the state agency charged with regulating securities repeatedly characterized such cryptoassets as "unregulated."[14] Suing Coinbase now based on conduct stretching back over a decade is the antithesis of fair notice and violates the protections of the Due Process Clause. Moreover, because Oregon's lawsuit would prohibit activities that Coinbase is required to take pursuant to agreements with the federal government, the suit violates the Supremacy Clause.

13. For all those reasons, this lawsuit should never have been filed. But if the Attorney General insists on pursuing his defective claims, he must do so in this Court, because his Complaint is subject to removal on multiple grounds:

14. *First*, the action is removable under 28 U.S.C. §§ 1441(a) and 1331 because it asserts claims arising under federal law. The Oregon Attorney General's lawsuit rests on whether

---

[14] Oregon Div. of Fin. Reg., *supra* note 4.

Page 7 –   NOTICE OF REMOVAL OF ACTION

certain crypto transactions are "investment contracts" and therefore securities under Oregon law. But to answer that question, Oregon looks to *federal* law, analyzing whether the transactions meet a test established by the U.S. Supreme Court. That issue is necessarily raised by Oregon's complaint, substantial, and disputed between the parties. And far from "disturbing a congressionally approved balance of federal and state judicial responsibilities," *Grable & Sons Metal Prods., Inc.* v. *Darue Eng'g & Mfg.*, 545 U.S. 308, 309 (2005), allowing this lawsuit to be heard in federal court is the only way to serve that balance. For all of those reasons, this action is subject to federal-question removal under the standard established in *Grable*.

15.     *Second*, the action is subject to federal-officer removal under 28 U.S.C. § 1442(a)(1). The U.S. Marshals Service has hired Coinbase as its agent to trade digital assets seized by the federal government, including more than half of the digital assets targeted in this action. The Attorney General seeks to punish Coinbase for trading in these assets and to enjoin it from future sales — a remedy that would directly implicate Coinbase's actions taken on behalf of federal law enforcement, under color of federal authority, and at the direction of federal officers. Removal is therefore proper under § 1442(a)(1) as well.

## THE PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN MET

16.     This Court is the proper venue for removal. The Attorney General filed suit in the Circuit Court of the State of Oregon for the County of Multnomah. Ex. 1 (the "Complaint"). Under 28 U.S.C. § 1441(a), state actions must be removed to the "district court of the United States for the district and division embracing the place where [the] action is pending."

17.     Removal is timely. Pursuant to 28 U.S.C. § 1446(b), a notice of removal must be filed within 30 days following service of the Complaint. Coinbase accepted service of the Complaint on May 1, 2025. Ex. 2. The statutory deadline for filing a notice of removal is thus June

2, 2025. *See* 28 U.S.C. § 1446(b)(1); Fed. R. Civ. P. 6(a)(1)(C) (deadlines falling on weekends are extended to the following business day).

18. Pursuant to 28 U.S.C. § 1446(d), Coinbase will file a copy of the Notice of Removal with the clerk of the state court in which this action is currently pending. Coinbase will also serve written notice of the filing of this Notice of Removal on counsel for the State of Oregon.

## REMOVAL IS AUTHORIZED BY FEDERAL STATUTE

I. **THIS ACTION IS REMOVABLE BECAUSE IT NECESSARILY RAISES A FEDERAL ISSUE THAT IS DISPUTED AND SUBSTANTIAL.**

19. A state action may be removed to federal court when it "aris[es] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331; *see* 28 U.S.C. § 1441(a). This "federal question" removal is not restricted to claims that directly assert a federal cause of action. The statute also broadly covers "claims recognized under state law that nonetheless turn on substantial questions of federal law," because the implication of "significant federal issues . . . justif[ies] resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312. As the Supreme Court held in *Grable*, removal is proper where a "state-law claim contains a federal issue that is (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance." *Ranck* v. *Mt. Hood Cable Regul. Comm'n*, 2017 WL 1752954, at *2 (D. Or. May 2, 2017).

20. In this action, the Attorney General seeks to hold Coinbase liable under Oregon law for the sale of cryptoassets, alleging that transactions in those assets on Coinbase's secondary market are securities because each formed an "investment contract[]." Compl. ¶ 71. Satisfying the first and second factors of *Grable,* the Attorney General's claims necessarily raise the disputed

Page 9 –    NOTICE OF REMOVAL OF ACTION

question of whether exchange-based trading in those assets forms "investment contracts." That question turns on federal law, as Oregon evaluates "investment contracts" under the standard applied by the U.S. Supreme Court in *S.E.C.* v. *W.J. Howey Co.*, 328 U.S. 293 (1946) and its progeny in the context of the Exchange Act. *See Computer Concepts, Inc.* v. *Brandt*, 310 Or. 706, 714 n.7 (1990).

21.     *Grable*'s third and fourth factors are satisfied as well. The federal question at issue is substantial not just because it sits at the fulcrum of this litigation, but also because it implicates the regulation of a multi-trillion-dollar global industry. *See Gunn* v. *Minton*, 568 U.S. 251, 260 (2013) ("The substantiality inquiry . . . looks [] to the importance of the issue to the federal system as a whole."). Here, the Attorney General would ask an Oregon state court to resolve foundational questions — when do cryptoasset transactions on crypto platforms involve securities — that are presently being weighed by Congress, the CFTC, a dedicated SEC task force, and federal courts around the country.[15] And because the Attorney General's action "implicates the federal government's strong interest in national regulation" of — including uniform rules for — interstate digital-asset transactions, the balance of state-federal enforcement authority favors removal as well. *Sauk-Suiattle Indian Tribe* v. *City of Seattle*, 56 F.4th 1179, 1185 (9th Cir. 2022). That interest confirms that the issues raised here belong in federal court. *See id.*

---

[15]     *See, e.g.*, *Clarke* v. *Chow*, 25-cv-03268 (S.D.N.Y. Apr. 19, 2025) (securities class action against issuers of crypto token and crypto asset exchange); *Riley* v. *Phoenix Cmty. Cap.*, 25-cv-00036 (M.D. Tenn. Jan. 8, 2025) (securities action against promoters of crypto ventures); *Real* v. *Yuga Labs, Inc.*, 22-cv-08909 (C.D. Cal. Dec. 8, 2022) (securities class action against issuers and promoters of crypto assets).

## II. THIS ACTION IS REMOVABLE BECAUSE THE STATE HAS TARGETED COINBASE'S CONDUCT ON BEHALF OF THE FEDERAL GOVERNMENT.

22. Removal is also proper under the federal-officer removal statute, 28 U.S.C. § 1442(a)(1), which permits removal of a civil action against "any officer (or any person acting under that officer) of the United States or of any agency thereof . . . for or relating to any act under color of such office." *Id.* This protection extends to companies that act as agents of the federal government. *See DeFiore* v. *SOC LLC*, 85 F.4th 546, 555 (9th Cir. 2023). "The purpose of [the] statute is to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his duties." *Goncalves ex rel. Goncalves* v. *Rady Childs. Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017). To vindicate "the interests of government itself in preserving its own existence," courts in this Circuit "interpret[] the statute broadly in favor of removal." *DeFiore*, 85 F.4th at 553. Under this "generous and liberal" standard, a party seeking removal need only "show that (a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a colorable federal defense." *Id*.

23. The federal-officer removal statute applies here because Coinbase acts as an agent of the federal government with respect to the sale of billions of dollars' worth of cryptoassets throughout the United States. In December 2022, Coinbase entered into a Prime Broker Agreement and accompanying Master Trading Agreement with the U.S. Marshals Service ("USMS"), under which it committed to act as the USMS's agent for the sale of digital assets seized as part of the DOJ's Asset Forfeiture Program. Ex. 3. Under that agreement, Coinbase must open an account for the USMS on Coinbase Prime's execution platform, which shall "provide Client [*i.e.*, the USMS] with access to trade execution and automated trade routing services and Coinbase Execution Services . . . to enable Client to submit orders . . . to purchase and sell specified Digital

Assets . . . ." Ex. 3 at 16. The Master Trading Agreement further provides that "[n]either Coinbase nor any Coinbase Entity will sell, transfer, loan, rehypothecate or otherwise alienate Client's Assets credited to Client's Trading Balance *unless instructed by Client* pursuant to an agreement between Client and a Coinbase Entity." Ex. 3 at 18, § 2.7 (emphasis added).

24. Coinbase operates a nationwide platform that includes consumers in Oregon and beyond, and its duty under the agreement is to sell the seized assets for the U.S. government at the best price available through this nationwide platform. Under its agreement with the USMS, Coinbase has conducted more than half a million sales of federal cryptoassets, including sales of more than half of the cryptoassets targeted by the Attorney General in this action.[16] These sales were each tightly controlled by the terms of Coinbase's agreement with the federal government, requiring Coinbase to operate at the direction of and subject to the guidance, supervision, and control of the USMS and its officers. Prior to entering into the agreement with Coinbase in 2022, the USMS directly managed the federal government's seized cryptoassets, consistent with its regulatory mandate to administer the federal asset seizure and forfeiture programs. *See* 28 C.F.R. § 0.111(i); Justice Manual § 9-115.100. The services provided by Coinbase under its agreement are thus essential to the USMS's fulfillment of its core regulatory responsibilities.

25. The Attorney General's claims directly implicate and thus have a clear causal nexus to Coinbase's duties and performance under these agreements. *See DeFiore*, 85 F.4th at 555 (causation requirement satisfied where removing party "establish[es] that the act that is the subject of [the state's] attack . . . occurred while [the party was] performing [its] official duties" (cleaned up)). The federal government has hired Coinbase to act as its agent in transacting in cryptoassets

---

[16] Specifically, Coinbase has sold AAVE, ADA, ALGO, AMP, APE, ATOM, CHZ, COMP, EOS, FIL, LINK, MATIC, MKR, SAND, SOL, and UNI as an agent of the USMS.

Page 12 –   NOTICE OF REMOVAL OF ACTION

held in accounts on the Coinbase Prime platform. The Attorney General seeks to hold Coinbase liable for the sale of many of the same cryptoassets on its platform, and to enjoin future sales. The conflict is palpable: If the Attorney General prevails in this action, Coinbase would be *liable* for and *barred* from selling digital assets in Oregon *on behalf of the United States government*.

26.  The federal-defense requirement is easily met, too. Removal is appropriate under § 1442(a)(1) upon a showing of even one federal defense that is not "immaterial and made solely for the purpose of obtaining jurisdiction or . . . wholly insubstantial and frivolous." *DeFiore*, 85 F.4th at 560 (citation omitted). Coinbase has many substantial federal defenses.[17] For example:

a.  The Attorney General has failed to establish that either Coinbase, Inc. or Coinbase Global, Inc. has sufficient contacts with Oregon to subject it to the jurisdiction of the Oregon courts consistent with the federal Constitution. *See Swartz* v. *KPMG, LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("[C]onclusory allegations . . . are insufficient to establish a prima facie showing of personal jurisdiction.").

b.  The Attorney General cannot show that any of the digital-asset transactions identified in the Complaint qualify as "investment contracts" under the Exchange Act's framework, including because the transactions on Coinbase's platform do not grant the purchaser a contractual claim related to the future income, profits, or assets of a business enterprise.

c.  The Attorney General's enforcement action violates the fair notice requirements of the federal Due Process Clause. "A fundamental principle in our legal system is that laws

---

[17] Coinbase expressly reserves all of its rights and defenses, and nothing in this Notice of Removal shall be construed as in any way conceding the truth of any of the Complaint's allegations or waiving any of Coinbase's defenses. Moreover, while this Notice for simplicity refers collectively to Coinbase, Inc. and Coinbase Global, Inc. as "Coinbase," Defendants reserve all rights, arguments, and defenses, including as to jurisdiction, concerning the different activities undertaken by the two distinct entities.

Page 13 – NOTICE OF REMOVAL OF ACTION

which regulate persons or entities must give fair notice of conduct that is forbidden or required." *FCC* v. *Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012); *see also Upton* v. *S.E.C.*, 75 F.3d 92, 98 (2d Cir. 1996) ("Due process requires that 'laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited.'" (citation omitted)). For years, Oregon issued public guidance making plain its conclusion that the digital assets traded on platforms like Coinbase were "not regulated . . . by the State of Oregon" and never once suggested that Coinbase participated in unregistered securities transactions.[18] The Constitution does not countenance Oregon's attempt to impose retrospective sanctions in direct conflict with that guidance.

d. The Attorney General's action violates the Supremacy Clause. As discussed above, through this action, the Attorney General seeks to dictate how Coinbase performs services under a trading agreement entered into with the USMS in accordance with the Asset Forfeiture Program, which the USMS is required to administer by federal statute and regulations. Accordingly, the Attorney General's action would improperly impede, and indeed control, the federal government's execution of its statutory duties and responsibilities. His claims are therefore both preempted and otherwise unsustainable under the intergovernmental immunity doctrine. *See generally Geo Group, Inc.* v. *Newsom*, 50 F.4th 745 (9th Cir. 2022) (discussing both doctrines).

27. If the Attorney General wishes to attack and constrain the conduct of a federal agent, he must litigate these federal defenses — and many others — in federal court.

---

[18] *E.g.*, Oregon Div. of Fin. Reg., *supra* note 4.

**CONCLUSION**

28.     WHEREFORE, Coinbase removes this action, pursuant to 28 U.S.C. §§ 1331, 1441, 1442, and 1446, from the Circuit Court of the State of Oregon for the County of Multnomah to the United States District Court for the District of Oregon.

DATED:  June 2, 2025              STOEL RIVES LLP


*s/ Timothy W. Snider*
TIMOTHY W. SNIDER, OSB No. 034577
timothy.snider@stoel.com
JAMES A. KILCUP, OSB No. 173891
james.kilcup@stoel.com
KATE S. SHEPHERD, OSB No. 224891
kate.shepherd@stoel.com

AND

KEVIN S. SCHWARTZ, *pro hac vice* forthcoming
kschwartz@wlrk.com
NOAH B. YAVITZ, *pro hac vice* forthcoming
nbyavitz@wlrk.com
ADAM M. GOGOLAK, *pro hac vice* forthcoming
amgogolak@wlrk.com
SIJIN CHOI, *pro hac vice* forthcoming
schoi@wlrk.com
JULIA M. BRUCE, *pro hac vice* forthcoming
jmbruce@wlrk.com
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY  10019

*Attorneys for Defendants Coinbase, Inc. and Coinbase Global, Inc.*

## CERTIFICATE OF SERVICE

     I hereby certify that I served the foregoing **NOTICE OF REMOVAL OF ACTION** on the following named person(s) on the date indicated below by

- ☒ mailing with postage prepaid
- ☐ hand delivery
- ☐ facsimile transmission
- ☐ overnight delivery
- ☒ email
- ☒ notice of electronic filing using the CM/ECF system

to said person(s) a true copy thereof, contained in a sealed envelope if by mail, addressed to said person(s) at his or her last known address(es) indicated below.

Christopher J. Bateman
COHEN MILSTEIN SELLERS
& TOLL PLLC
88 Pine St., 14th Floor
New York, NY 10005
Email: cbateman@cohenmilstein.com

Julie G. Reiser
Margaret (Emmy) Wydman
COHEN MILSTEIN SELLERS
& TOLL PLLC
1100 New York Avenue, N.W., Suite 800
Washington, D.C. 20005
Email: jreiser@cohenmilstein.com
ewydman@cohenmilstein.com

Brian A. De Haan
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Email: brian.a.dehaan@doj.oregon.gov

Keil M. Mueller
Jennifer S. Wagner
Yoona Park
Norjmoo Battulga
KELLER ROHRBACK L.L.P.
601 S.W. Second Avenue, Suite 1900
Portland, OR 97204
Email: kmueller@kellerrohrback.com
jwagner@kellerrohrback.com
ypark@kellerrohrback.com
nbattulga@kellerrohrback.com

Page 1 –    CERTIFICATE OF SERVICE

DATED: June 2, 2025

        STOEL RIVES LLP

        *s/ Timothy W. Snider*
        TIMOTHY W. SNIDER
        Telephone: 503.224.3380

        *Attorneys for Defendants Coinbase, Inc. and Coinbase Global, Inc.*

Page 2 –   CERTIFICATE OF SERVICE