Keil M. Mueller, OSB No. 085535
Jennifer S. Wagner, OSB No. 024470
Yoona Park, OSB No. 077095
Norjmoo Battulga, OSB No. 242037
KELLER ROHRBACK L.L.P.
601 S.W. Second Avenue, Suite 1900
Portland, OR 97204
Tel. (971) 253-4600 Fax (206) 623-3384
kmueller@kellerrohrback.com
jwagner@kellerrohrback.com
ypark@kellerrohrback.com
nbattulga@kellerrohrback.com

*Special Assistant Attorneys General for Plaintiff*
[Additional Counsel listed on Signature Page]

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## DIVISION PORTLAND

| | |
|---|---|
| THE STATE OF OREGON, EX REL. DAN RAYFIELD, ATTORNEY GENERAL FOR THE STATE OF OREGON,<br><br>          Plaintiff,<br><br>v.<br><br>COINBASE, INC. AND COINBASE GLOBAL, INC.,<br><br>          Defendants. | No. 3:25-cv-00952-JR<br><br>**PLAINTIFF THE STATE OF OREGON'S MOTION TO REMAND**<br><br>**Pursuant to 28 U.S.C. § 1447(c)**<br><br>**Request for Oral Argument** |

**PLAINTIFF'S MOTION TO REMAND**

# TABLE OF CONTENTS

I.    LR 7-1(A) CERTIFICATION...........................................................................1

II.   MOTION.......................................................................................................1

III.  MEMORANDUM..........................................................................................1

A.    Introduction ...............................................................................................1

B.    Legal Standard ..........................................................................................5

C.    Argument ....................................................................................................5

1.    This Court Lacks Federal Question Jurisdiction......................................5

a.    The State's Claims Do Not Necessarily Raise a
Federal Issue. ........................................................................6

b.    The State's Claims Do Not Raise a Substantial
Federal Issue. ........................................................................8

c.    Removing This Case from Oregon State Court
Violates Federalism Principles. ..............................................10

2.    This Court Lacks Jurisdiction under the Federal Officer
Removal Statute. ..................................................................11

a.    Coinbase Fails to Establish a Causal Nexus Between
its Actions Taken on Behalf of USMS and the State's
Claims. ..................................................................................11

(i)    Coinbase Was Not "Acting Under" USMS. ..................14

(ii)    Coinbase Provides No Evidence of a "Causal
Connection" between Its Actions on Behalf
of USMS and the State's Claims.....................................17

(iii)    The Amended Complaint Clarifies Beyond
Dispute That the State's Claims Do Not
Address Any Sale of Crypto Securities By or
on Behalf of the Federal Government. ..........................18

b.    Coinbase Cannot Assert a Colorable Federal Defense
Arising out of the Services It Provides to USMS. ....................19

(i)    Coinbase's First Three Defenses Do Not
Arise out of "Official Duties." .......................................20

(ii)   Coinbase's Supremacy Clause Defense Is Not Colorable.............................................................. 22

3.   The Court Should Award the State Its Reasonable Attorney Fees and Costs............................................................................ 26

IV.   CONCLUSION ...................................................................................... 26

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A.S. Goldmen & Co. v. N.J. Bureau of Sec.*,
   163 F.3d 780 (3d Cir. 1999) ................................................. 2

*Application of Donovan*,
   601 F. Supp. 574, 579 (S.D.N.Y. 1985) ............................... 21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................ 5

*Badger v. Paulson Inv. Co.*,
   311 Or. 14 (1991) ............................................................... 8

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................ 5

*Brown v. Earthboard Sports USA*,
   481 F.3d 901 (6th Cir. 2007) .......................................... 9, 11

*City & Cnty. of Honolulu v. Sunoco LP*,
   39 F.4th 1101 (9th Cir. 2022) ..................................... *passim*

*City of Oakland v. BP PLC*,
   969 F.3d 895 (9th Cir. 2020) ............................................ 10

*Ciuffitelli for Tr. of Ciuffitelli Revocable Tr. v. Deloitte & Touche LLP*,
   No. 3:16-CV-580-AC, 2017 WL 2927481 (D. Or. Apr. 10, 2017), *report and*
   *recommendation adopted sub nom. Ciuffitelli v. Deloitte & Touche LLP*, No.
   3:16-CV-00580-AC, 2017 WL 2927150 (D. Or. July 5, 2017) .................... 2, 9, 11

*Computer Concepts, Inc. v. Brandt*,
   310 Or. 706 (1990) ......................................................... 7, 8

*County of San Mateo v. Chevron Corp.*,
   32 F.4th 733 (9th Cir. 2022) ..................................... 11, 14, 16

*Cousin v. Healthcare*,
   No. 22-cv-2040-MMA-DDL, 2024 WL 1184702 (S.D. Cal. Mar. 19, 2024) ....... 16

*Dart Cherokee Basin Operating Co. v. Owens*,
   574 U.S. 81 (2014) ............................................................. 5

*DeFiore v. SOC LLC*,
   85 F.4th 546 (9th Cir. 2023) ..................................... 13, 14, 15

*Empire Healthchoice Assurance v. McVeigh*,
　　547 U.S. 677 (2006) ............................................................................ 6, 10

*Fireman's Fund Ins. Co. v. City of Lodi, Cal.*,
　　302 F.3d 928 (9th Cir. 2002) .................................................................... 24

*Fisher v. Asbestos Corp.*,
　　No. 2:14-CV-02338-WGY, 2014 WL 3752020 (C.D. Cal. July 30, 2014) .................. 18, 19

*Foelker v. Kwake*,
　　279 Or. 379 (1977) .................................................................................. 6

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*,
　　463 U.S. 1 (1983) .................................................................................. 10

*Geo Grp., Inc. v. Newsom*,
　　50 F.4th 745 (9th Cir. 2022) ................................................................ 22, 24

*Goncalves ex rel. Goncalves v. Rady Child.' Hosp. San Diego*,
　　865 F.3d 1237 (9th Cir. 2017) .................................................................. 17

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
　　545 U.S. 308 (2005) ............................................................................. 9, 10

*Gunn v. Minton*,
　　568 U.S. 251 (2013) ........................................................................... 6, 7, 9

*Hopkins v. Walker*,
　　244 U.S. 486 (1917) ............................................................................... 9

*Hornish v. King County*,
　　899 F.3d 680 (9th Cir. 2018) ...................................................................... 9

*Hukkanen v. Air and Liquid Sys. Corp.*,
　　No. CV 17-2227-JFW, 2017 WL 1217075 (C.D. Cal. Mar. 31, 2017) .......................... 18

*Kaley v. United States*,
　　571 U.S. 320 (2014) .............................................................................. 25

*Kokkonen v. Guardian Life Ins. Co.*,
　　511 U.S. 375 (1994) ............................................................................... 5

*Leite v. Crane Co.*,
　　749 F.3d 1117 (9th Cir. 2014) ..................................................................... 5

*Lussier v. Dollar Tree Stores, Inc.*,
　　518 F.3d 1062 (9th Cir. 2008) .................................................................... 26

*Marcher v. Air and Liquid Sys. Corp.*,
2:22-cv-00059-RGK-MRW, 2022 WL 562268 (C.D. Cal. Feb. 24, 2022)...........................18

*Martin v. Franklin Corp.*,
546 U.S. 132 (2005) ..................................................................................................26

*Matsushita Elec. Indus. Co. v. Epstein*,
516 U.S. 367 (1996) ................................................................................................2, 9

*Mesa v. California*,
489 U.S. 121 (1989) .............................................................................................20, 21

*Mont. Med. Ass'n v. Knudsen*,
119 F.4th 618 (9th Cir. 2024) ......................................................................................24

*In re Nat'l Sec. Agency Telecomm. Recs. Litig.*,
633 F. Supp. 2d 892 (N.D. Cal. 2007)............................................................................23

*Nevada v. Bank of Am.*,
672 F.3d 661 (9th Cir. 2012) ................................................................................*passim*

*Nevada v. Optum, Inc.*,
No. 2:24-CV-00493-RFB-DJA, 2025 WL 947041 (D. Nev. Mar. 30, 2025) ........................19

*People of the State of N.Y. v. Mek Global Ltd.*,
No. 450703/2023, 2024 WL 184484 (Trial Order) (N.Y. Sup. Ct. Jan. 11,
2024)...........................................................................................................................3

*Pratt v. Kross*,
276 Or. 483 (1976) ..............................................................................................4, 6, 7

*Prince v. Brydon*,
307 Or. 146 (1988) ......................................................................................................8

*Ranck v. Mt. Hood Cable Regul. Comm'n*,
No. 3:16-CV-02409-AA, 2017 WL 1752954 (D. Or. May 2, 2017) ...................................5, 6

*Roskind v. Morgan Stanley Dean Witter & Co.*,
165 F. Supp. 2d 1059 (N.D. Cal. 2001)............................................................................8

*Royal Canin U.S.A., Inc. v. Wullschleger*,
604 U.S. 22 (2025) ...............................................................................................18, 19

*Sauk-Suiattle Indian Tribe v. City of Seattle*,
56 F.4th 1179 (9th Cir. 2022) .......................................................................................9

*SEC v. W.J. Howey Co.*,
328 U.S. 293 (1946) ...........................................................................................*passim*

*Smith v. Kan. City Title & Tr. Co.*,
   255 U.S. 180 (1921) ................................................................................9

*St. Mary's Reg'l Med. Ctr. v. Renown Health*,
   35 F. Supp. 3d 1275 (D. Nev. 2014) ..............................................7, 8

*State v. Nistler*,
   268 Or. App. 470 (2015) .........................................................................6

*United States v. California*,
   921 F.3d 865 (9th Cir. 2019) ...................................................23, 24, 25

*United States v. King Cnty., Wash.*,
   122 F.4th 740 (9th Cir. 2024) ..............................................................23

*United States v. Washington*,
   596 U.S. 832 (2022) ..............................................................................22

*Watson v. Philip Morris Cos., Inc.*,
   551 U.S. 142 (2007) ..............................................................................15

**Statutes**

15 U.S.C. § 77r ...........................................................................................11

21 U.S.C. § 881(e)(1)(B) ...........................................................................25

28 U.S.C. § 1331 ........................................................................................11

28 U.S.C. § 1441(a) ...................................................................................11

28 U.S.C. § 1442(a)(1) .........................................................................11, 26

28 U.S.C. § 1447(c) .........................................................................1, 19, 26

Oregon Securities Law ("OSL") ......................................................*passim*

Or. Rev. Stat. § 59.035(1) ..............................................................18, 23, 25

Or. Rev. Stat. § 59.055 .................................................................................3

Or. Rev. Stat. § 59.115(1)(a) ........................................................................3

Or. Rev. Stat. § 59.115(3) .......................................................................3, 8

**Rules**

Fed. R. Civ. P. 8 ...........................................................................................5

**Regulations**

28 C.F.R. § 0.111(i) ................................................................................................25

39 C.F.R. § 233.7(q)................................................................................................25

**Other Authorities**

Assurance of Discontinuance, *BlockFi Lending LLC* (June 7, 2022),
        https://ag.ny.gov/sites/default/files/2022.06.07_blockfi_nyoag_aod......................................3

Desist and Refrain Order, *Voyager Digital Ltd.*, 2022 WL 3722982 (Cal. Dept.
        Corp. June 3, 2022) ........................................................................................3

Memo., *People of the State of N.Y. v. Vino Global Ltd.*, No. 450503/2023 (N.Y.
        Sup. Ct. Feb. 22, 2023),
        https://ag.ny.gov/sites/default/files/memorandum_of_law_in_support_of_petit
        ion._nyoag_v._vinogloballtd_dba_coinex.pdf...........................................................3

Press Release, *New Jersey Bureau of Securities Orders Cryptocurrency Firm
        Celsius to Halt the Offer and Sale of Unregistered Interest-Bearing
        Investments*, N.J. Off. Att'y Gen. (Sept. 17, 2021),
        https://www.njoag.gov/new-jersey-bureau-of-securities-orders-
        cryptocurrency-firm-celsius-to-halt-the-offer-and-sale-of-unregistered-
        interest-bearing-investments/;..............................................................................3

Settlement Agreement, *Nexo Cap., Inc..*,
        2023 WL 1499984 (Cal. Dept. Corp. Jan. 26, 2023) ............................................3

## I.    LR 7-1(A) CERTIFICATION

In compliance with Local Rule 7-1(a), Plaintiff the State of Oregon certifies that the parties discussed the issues that are the subject of this motion by video/telephone conference on July 1, 2025, in a good faith effort to resolve this dispute, but that they were unable to do so.

## II.    MOTION

Pursuant to 28 U.S.C. § 1447(c), for the reasons explained in the accompanying Memorandum, Plaintiff the State of Oregon ("the State," "Oregon") moves the Court for an order remanding this case to the Circuit Court of the State of Oregon for Multnomah County and awarding the State its reasonable attorney fees and costs associated with this motion.

In support of this motion, Oregon relies on the memorandum below, the Declaration of Keil M. Mueller and exhibits attached thereto, and the record in this matter.

## III.    MEMORANDUM

### A.    Introduction

The State of Oregon brought this action in Oregon state court to hold Defendants Coinbase, Inc. and Coinbase Global, Inc. (collectively, "Coinbase") accountable for their role in the sale of unregistered cryptocurrency securities to Oregon residents, who have suffered devastating losses on many of these highly speculative investments in the absence of proper disclosures about their risks. In removing this case, Coinbase improperly seeks to strip the Oregon courts of jurisdiction over an enforcement action brought by the Oregon Attorney General solely under Oregon law to protect Oregon residents.

Coinbase has for years operated an illegal securities business in Oregon through its cryptocurrency trading platform and its practice of selling high-risk, unregistered crypto assets to Oregonians. Am. Compl. ¶ 1, ECF 18. The crypto assets at issue in the State's Complaint (the "Crypto Securities") are offered and sold as investment contracts, and thus as securities. *Id*. ¶ 71.

Coinbase facilitates the trading of crypto assets by assisting customers, including those in Oregon, in opening and using trading accounts, handling customer funds, and routing and handling customer orders. *Id.* ¶ 46. Coinbase solicits customers by advertising on its website and social media, and it works closely with crypto issuers to list their tokens on the Coinbase platform and promote them, facilitating their sale to the public. *Id.* ¶ 50.

Coinbase's removal gambit and bluster about the State's "regulatory land grab" ignores the complementary, dual enforcement roles that federal and state governments have played in the regulation of securities in this country for nearly a century. *See Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 383–84 (1996) ("Congress plainly contemplated the possibility of dual litigation in state and federal courts relating to securities transactions."); *A.S. Goldmen & Co. v. N.J. Bureau of Sec.*, 163 F.3d 780, 781 (3d Cir. 1999) (citing Louis Loss & Joel Seligman, 1 Securities Regulation 40–41 (3d ed. Rev. 1998)) (noting longstanding state regulation of securities under "blue sky" laws). Indeed, Congress has specifically preserved the prerogative of state governments to independently regulate the registration of many securities, including those at issue here. *See, e.g., Ciuffitelli for Tr. of Ciuffitelli Revocable Tr. v. Deloitte & Touche LLP*, No. 3:16-CV-580-AC, 2017 WL 2927481, at *18 (D. Or. Apr. 10, 2017) (holding that federal law exempting certain "covered securities" from state securities regulation does not preempt state regulation of other securities), *report and recommendation adopted sub nom. Ciuffitelli v. Deloitte & Touche LLP*, No. 3:16-CV-00580-AC, 2017 WL 2927150 (D. Or. July 5, 2017). While state blue sky laws are similar to the federal securities laws in many ways, they diverge in important respects. For example, some states' laws—including the Oregon Securities Law ("OSL")—provide greater protection to investors than federal securities law.

Consistent with this longstanding dual-enforcement system, the State alleges that Coinbase has sold or successfully solicited sales of the Crypto Securities to Oregon residents in violation of Oregon Revised Statutes ("ORS") §§ 59.055 and 59.115(1)(a), and further participated or materially aided in the unlawful sale of unregistered securities in violation of ORS § 59.115(3). Am. Compl. ¶ 505. In doing so, Oregon is far from the first state to enforce its securities laws against non-compliant actors in the cryptocurrency industry, including specifically over the sale of unregistered securities and specifically against Coinbase.[1]

On June 2, 2025, Coinbase filed its notice of removal, which is light on facts and legal argument. Coinbase seeks to wrest this action from the Oregon courts—or perhaps just stall it through the removal procedure—despite the absence of any federal claims and the presence of extensive Oregon contacts and important state interests.

Coinbase first asserts that this action raises a federal question, arguing that Oregon's state law claims "arise under" federal law because Oregon courts look to the federal Securities Act of 1933 ("1933 Act") and *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) for guidance as to what

---

[1] *See, e.g.*, *People of the State of N.Y. v. Mek Global Ltd.*, No. 450703/2023, 2024 WL 184484 (Trial Order) (N.Y. Sup. Ct. Jan. 11, 2024) (consent order and judgment against crypto exchange KuCoin including monetary and injunctive relief resolving claims concerning sale of unregistered securities under New York law); Press Release, *New Jersey Bureau of Securities Orders Cryptocurrency Firm Celsius to Halt the Offer and Sale of Unregistered Interest-Bearing Investments*, N.J. Off. Att'y Gen. (Sept. 17, 2021), https://www.njoag.gov/new-jersey-bureau-of-securities-orders-cryptocurrency-firm-celsius-to-halt-the-offer-and-sale-of-unregistered-interest-bearing-investments/; Settlement Agreement, *Nexo Cap., Inc.*, 2023 WL 1499984 (Cal. Dept. Corp. Jan. 26, 2023); Desist and Refrain Order, *Voyager Digital Ltd.*, 2022 WL 3722982 (Cal. Dept. Corp. June 3, 2022); Assurance of Discontinuance, *BlockFi Lending LLC*, Assurance No. 22-032 (June 7, 2022), https://ag.ny.gov/sites/default/files/2022.06.07_blockfi_nyoag_aod .pdf; Memo., *People of the State of N.Y. v. Vino Global Ltd.*, No. 450503/2023 (N.Y. Sup. Ct. Feb. 22, 2023), https://ag.ny.gov/sites/default/files/memorandum_of_law_in_support_of_petition._nyoag_v._vi nogloballtd_dba_coinex.pdf.

constitutes an "investment contract" under the OSL.[2] Defs.' Notice ¶ 20, ECF 1. But almost 50 years ago, the Supreme Court of Oregon, sitting *en banc*, broke stride with *Howey* in its interpretation of an "investment contract" under the OSL, deciding the term should be "modified" to encompass a broader range of investment schemes. *Pratt v. Kross*, 276 Or. 483, 497 (1976). Oregon courts have followed this distinct test ever since. Because Oregon does not strictly follow the *Howey* test, the State's claims here do not turn on the *Howey* test. Moreover, Coinbase ignores other important differences between the OSL and the federal 1933 Act as well as Oregon's strong interests in maintaining this action in its courts, all of which further undercut Coinbase's argument for federal question jurisdiction.

Coinbase's argument for removal on the basis of federal officer jurisdiction fares no better. The Prime Broker Agreement between Coinbase and the U.S. Marshals Service ("USMS") does not demonstrate the close direction and control of Coinbase's actions necessary for federal officer removal. Coinbase also fails to demonstrate a causal connection between its fulfillment of its obligations to USMS and the State's claims, and it fails to assert a colorable federal defense arising from its purported official duties.

Coinbase's violations of the OSL have injured thousands of Oregon residents. Am. Compl. ¶ 507. For many of these individuals, their damages may be too small to make individual suit practical, and Coinbase has for years included arbitration and class action waiver provisions in its User Agreement for the Coinbase Platform. *Id.* By this action, the State seeks to protect its people

---

[2] In light of the legitimate, independent role that state securities law enforcement plays in regulating securities, and the legal standards that apply to this removal dispute, which recognize the importance of respecting state courts' jurisdiction over state law cases such as this one, Coinbase's appeals to various federal developments—such as the SEC's abandonment of its crypto enforcement efforts and draft federal legislation that lacks the force of law—are irrelevant to the question of whether it was proper to yank this case from the Oregon courts.

against existing and future harms that have resulted—and will continue to result—from Coinbase's violations of the Oregon Securities Law. Far from being a "regulatory land grab," the State's claims seek redress on behalf of Oregon residents under Oregon law—a quintessential state law action that should be adjudicated by the state court in which the Attorney General filed it. The Court should remand this case back to the Circuit Court of the State of Oregon for Multnomah County.

## B.    Legal Standard

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . ." *Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994). Courts should "strictly construe[]" removal statutes "against removal jurisdiction." *Nevada v. Bank of Am.*, 672 F.3d 661, 667 (9th Cir. 2012) (quoting *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002)) (quotation marks omitted). As the removing party, Coinbase bears the burden of establishing that jurisdiction is proper. *Leite v. Crane Co.*, 749 F.3d 1117, 1122 (9th Cir. 2014); *Ranck v. Mt. Hood Cable Regul. Comm'n*, No. 3:16-CV-02409-AA, 2017 WL 1752954, at *1 (D. Or. May 2, 2017).

The federal pleading standards of Rule 8 apply to the jurisdictional allegations in a notice of removal. *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014). Accordingly, the removal notice "must allege facts, not mere legal conclusions, in compliance with the pleading standards established in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)." *Leite*, 749 F.3d at 1121.

## C.    Argument

### 1.    This Court Lacks Federal Question Jurisdiction.

To vindicate its citizens' interests, the State of Oregon filed this case in Oregon state court alleging exclusively violations of Oregon law. *See* Am. Compl. ¶¶ 1, 504–11. Nonetheless,

Coinbase removed the case on the basis that these state law claims purportedly "turn on [a] substantial question[] of federal law." Defs.' Notice ¶ 19 (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005)). According to Coinbase, Oregon courts define investment contracts "under the standard applied by the U.S. Supreme Court in [*Howey*]" thereby triggering the federal courts' jurisdiction. *Id.* ¶ 20.

Coinbase is only correct if, by virtue of the State's claims, a federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton,* 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S. at 314); *Ranck*, 2017 WL 1752954, at *1 (citing *Cal. Shock Trauma Air Rescue v. State Comp. Ins. Fund*, 636 F.3d 538, 542 (9th Cir. 2011)). Because Coinbase fails to establish three of the four elements, the action at hand does not fall into the "special and small category" of cases in which state law claims brought in state court must nonetheless be litigated in federal court. *Empire Healthchoice Assurance v. McVeigh*, 547 U.S. 677, 699 (2006).

### a.    The State's Claims Do Not Necessarily Raise a Federal Issue.

A federal issue is necessarily raised only where a state law claim hinges on the adjudication of that federal issue. *Gunn*, 568 U.S. at 258. That is not true here.

As discussed, Coinbase's sole argument under this prong is that "Oregon evaluates 'investment contracts' under the standard applied by the U.S. Supreme Court" in *Howey*. Defs.' Notice ¶ 20. But, since 1976, Oregon courts have not strictly followed the *Howey* test, adopting instead a "modified" test that differs significantly from *Howey*. *Pratt*, 276 Or. at 497; *State v. Nistler*, 268 Or. App. 470, 481 (2015) (reiterating that Oregon adopted the *Howey* test only "in part" and "modified" it). Significantly—and consistent with its edict that the OSL "is to be liberally construed so as to afford the 'greatest possible protection' to the public[,]" *Foelker v. Kwake*, 279

Or. 379, 385 (1977)—the Oregon Supreme Court departed from the *Howey* test because it concluded it was underinclusive for purposes of defining an investment contract under the OSL. *Pratt*, 276 Or. at 495–97.

Thus, contrary to Coinbase's argument, *see* Defs.' Notice ¶ 20, whether the alleged Crypto Securities are investment contracts under the OSL does not "turn[] on" whether they would be investment contracts under federal securities law. Under Oregon's modified investment contract test, a plaintiff "need not establish a [federal securities law] violation to claim that [a defendant] violated" the corollary state law provision. *St. Mary's Reg'l Med. Ctr. v. Renown Health*, 35 F. Supp. 3d 1275, 1282–84 (D. Nev. 2014) (finding no necessary federal issue because "Plaintiffs' UTPA claims can be decided independently of any federal question"); *Gunn*, 568 U.S. at 259–62 (federal question necessarily raised because determining whether attorney's malpractice "cause[d]" plaintiff's injuries required analyzing whether plaintiff "would have prevailed in his federal patent infringement case"). Given the distinction between the Oregon and federal tests, the Crypto Securities can be investment contracts under *Pratt* and its progeny even if they would not be investment contracts under *Howey*. *See Pratt*, 276 Or. at 495–97; *see also Nevada*, 672 F.3d at 675 (finding no necessary federal issue embedded in state-law claim even where some alleged misrepresentations may also have violated federal corollary). This alone suffices to show that "this state-law claim is not within the 'special and small category' of cases in which federal issues are embedded in state-law claims." *St. Mary's*, 35 F. Supp. 3d at 1282.

To be sure, courts "may look to federal cases for guidance in interpreting the meaning of 'investment contract'" under Oregon law. *Computer Concepts, Inc. v. Brandt*, 310 Or. 706, 714 n.7 (1990). But the Oregon Supreme Court has long held that, even "[i]n situations involving Oregon [securities] laws in large measure drawn from a federal counterpart," those decisions "*do*

*not bind*" a court when applying a distinguishable test under *Oregon* law. *Badger v. Paulson Inv. Co.*, 311 Or. 14, 21 (1991) (emphasis added).[3]  This is particularly so where a state claim is "supported by [an] alternative and independent theor[y]" such that "federal law is not a necessary element of the [state] claim," as is the case here given the differences between the state and federal investment contract tests. *Nevada*, 672 F.3d at 674–75; *Roskind v. Morgan Stanley Dean Witter & Co.*, 165 F. Supp. 2d 1059, 1067 (N.D. Cal. 2001) (no federal jurisdiction over state securities claims where the plaintiff "need[ed] not establish a violation of" federal law "to establish liability").[4]

Because the State's claims under the OSL "can be decided independently of any federal question," the Complaint does not necessarily raise a federal issue. *St. Mary's*, 35 F. Supp. 3d at 1284.

      **b.**    **The State's Claims Do Not Raise a Substantial Federal Issue.**

Regardless of whether the Court finds that a federal issue is necessarily raised (which it should not), the purported federal issue lingering here—that, as applied to its state-specific statute, the Oregon Supreme Court modified the U.S. Supreme Court's interpretation of a federal law—is

---

[3] The OSL provisions under which the State brings its claims differ in additional respects from the 1933 Act. For example, the OSL expressly imposes liability against "every person who participates or materially aids" in the unlawful sale of a security, an expansive provision absent from the 1933 Act. Or. Rev. Stat. § 59.115(3); *see also, e.g.*, *Prince v. Brydon*, 307 Or. 146, 150-51 (1988) (holding that attorneys who prepare documents material to the unlawful sale of securities may be held liable under this provision).

[4] Although *Computer Concepts* stated that "[t]he definition of 'security' under federal law is substantially the same as Oregon's," the court was clear that this does not mean the tests for "investment contract" or "security" are identical. 310 Or. at 714 n.7. Rather, the court affirmed and applied *Pratt*'s "modified *Howey* test," and went on to further deviate from the restrictive interpretation of *Howey* that some federal courts had adopted, again confirming that the Oregon Supreme Court treats federal securities decisions as mere non-binding "guidance in interpreting the meaning of 'investment contract.'" *Id.* at 714–15, 714 n.7.

not "substantial" in the relevant sense because Coinbase cannot show this issue is "important[t] . . . to the federal system as a whole" as the substantiality inquiry requires. *Gunn*, 568 U.S. at 260.

For starters, this is a far cry from the federal issues considered substantial in the governing cases, which included a direct and unavoidable application of a federal statute, *Grable*, 545 U.S. at 314–15, and a challenge to a federal statute's constitutionality, *Smith v. Kan. City Title & Tr. Co.*, 255 U.S. 180, 199 (1921).[5]  In fact, the clearly delineated and century-long dual enforcement scheme of state and federal securities regulation undermines Coinbase's argument that such a dispute falls only in the federal courts' ambit. *See Matsushita*, 516 U.S. at 383–84 ("Congress plainly contemplated the possibility of dual litigation in state and federal courts relating to securities transactions."); *Brown v. Earthboard Sports USA*, 481 F.3d 901, 911–12 (6th Cir. 2007) (holding that federal law exempting certain "covered securities" from state securities regulation does not preempt state regulation of other securities); *Ciuffitelli*, 2017 WL 2927481, at *18 (same). Rather, a state enforcement action invoking its regulatory powers with respect to sales exclusively to its own residents does not trigger an overriding federal government "interest in national regulation[.]" *Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1185 (9th Cir. 2022) (finding federal jurisdiction over claims alleging federal licensing of dam violated Constitution).[6] Had Congress wanted to "preclude the operation of state laws" and place "supervision" of securities regulation exclusively "in the hands of" the SEC and federal courts, it could have. *Hornish v. King County*, 899 F.3d 680, 691 (9th Cir. 2018). Under such circumstances, there is no

---

[5] Nor is this an instance in which the State has conceded that their state law claim "arises by reason of the peculiar provisions of the [federal] law[.]" *Hopkins v. Walker*, 244 U.S. 486, 490–491 (1917).

[6] Coinbase's claim that the State's lawsuit "implicates the regulation of a multi-trillion-dollar global industry," Defs.' Notice ¶ 21, is misleading on several levels. The Complaint targets 31 out of the millions of cryptocurrencies that exist, and does not allege that Bitcoin, which comprises the majority of the crypto market's value, is a security.

"serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable*, 545 U.S. at 313.

### c.    Removing This Case from Oregon State Court Violates Federalism Principles.

Given that Oregon's state law claims do not necessarily raise a substantial federal issue, the claims do not fit within the "slim category *Grable* exemplifies," *Empire Healthchoice*, 547 U.S. at 701. Failure to remand this case would also disturb established federalism principles.

As was the case in *Nevada v. Bank of America Corp.*, "[t]he [Oregon] Attorney General brought this *parens patriae* action in state court to enforce its own state consumer protection laws" in which the State "alleges only state law causes of action, brought to protect [its] residents." 672 F.3d at 676. Based on this alone, the "claim of sovereign protection from removal arises in its most powerful form." *Id.* (quoting *W. Va. ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 178 (4th Cir. 2011)). "[C]onsiderations of comity make [federal courts] reluctant to snatch cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 21 n.22 (1983).

No clear rule, nor any overriding federal interest, demands as much here. While the federal cryptocurrency regulatory scheme may be "an important policy question[,]" *City of Oakland v. BP PLC*, 969 F.3d 895, 907 (9th Cir. 2020), this action is about *Oregon*'s state-specific regulatory scheme and protecting *Oregon* residents.[7] And as noted above, with limited exceptions not applicable here,[8] Congress has deliberately chosen to preserve state securities registration requirements such as those at issue here, evincing a respect for independent regulation by the

---

[7] As noted above, the State's claims are expressly limited to sales of the Crypto Securities to "Oregon residents." Am. Compl. ¶¶ 505–06.

[8] Coinbase does not argue any of the exceptions apply here, and thus concedes that none do.

states—and their courts—in this area. *See* 15 U.S.C. § 77r; *Brown*, 481 F.3d at 911–12; *Ciuffitelli*, 2017 WL 2927481, at *18. As a result, "[Oregon]'s strong sovereign interest in enforcing its state laws—and its state-law-created [investment contract test]—in the courts of its own state weighs in favor of remand to its state court system." *Nevada*, 672 F.3d at 676.

For each of the foregoing independent reasons, the Complaint does not assert claims arising under federal law, so this case cannot be removed from state court by way of 28 U.S.C. §§ 1441(a) and 1331.

## 2. This Court Lacks Jurisdiction under the Federal Officer Removal Statute.

Coinbase's removal of this case under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), is also improper. In the Ninth Circuit, a private person seeking to remove a case based on federal officer removal jurisdiction "must establish: '(a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and [the] plaintiff's claims; and (c) it can assert a colorable federal defense.'" *County of San Mateo v. Chevron Corp.*, 32 F.4th 733, 755 (9th Cir. 2022) (quoting *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981, 986–87 (9th Cir. 2019)). Coinbase fails to make the required showing under the second and third prongs of this test.

### a. Coinbase Fails to Establish a Causal Nexus Between its Actions Taken on Behalf of USMS and the State's Claims.

To demonstrate the required causal nexus under the second prong, Coinbase must show (1) that it "was 'acting under' a federal officer in performing some 'act under color of federal office,' and (2) that such action is causally connected with the plaintiff's claims against it." *San Mateo*, 32 F.4th at 755 (citing *Goncalves ex rel. Goncalves v. Rady Child.' Hosp. San Diego*, 865 F.3d 1237, 1244–50 (9th Cir. 2017)). Coinbase relies on the Prime Broker Agreement and accompanying Master Trading Agreement that it entered into with USMS (the "Prime Broker

Agreement" or the "Agreement"),[9] *see* Defs.' Notice ¶ 23, but fails to make either required showing.

The Coinbase Prime trade execution services that Coinbase provides to USMS are available to the public, and the Agreement is a standard form agreement that is substantively identical to Coinbase's prime broker agreements with other customers. *Compare* ECF 1-3 *with* Mueller Decl., Ex. A (agreement with Mercurity Fintech Technology Holding Inc.) and Ex. B (agreement with 21Shares US LLC).[10] Like Coinbase's agreements with other Coinbase Prime customers, the Prime Broker Agreement is expressly limited in scope and sets forth the terms and conditions under which Coinbase receives orders from USMS and executes those transactions.[11] ECF 1-3 at 2 (§ 1).

Under the Agreement, USMS—not Coinbase—decides which of its crypto assets to sell and when to sell them, *id.* at 17 (Ex. A, § 1.1), while Coinbase—not USMS—determines, in its "*sole discretion*," which crypto assets are available to buy and sell through its trading platform, *see id.* at 20 (Ex. A, § 6). When USMS submits an order to sell crypto asserts that are available for trading on Coinbase's platform, Coinbase executes the order. Nothing in the Agreement suggests

---

[9] The Prime Broker Agreement includes both the "General Terms and Conditions" set forth at pages 2–16 of ECF 1-3 and the terms and conditions set forth in the Master Trading Agreement, which is attached as Exhibit A to the General Terms and Conditions and is set forth at pages 17–23 of ECF 1-3. Citations to the Prime Broker Agreement in this memorandum refer to the page number in the ECF header and the relevant section number. Provisions of the Master Trading Agreement include the notation "Ex. A."

[10] Apart from the identity of the parties and fee schedule in Appendix 1 (parts of which Coinbase redacted), the only difference between the Prime Broker Agreement with USMS and Coinbase's other prime broker agreements is that, unlike these other customers, USMS does not use Coinbase's custody services. *Compare* ECF 1-3 *with* Mueller Decl., Exs. A and Ex. B.

[11] ECF 1-3 at 17 (ex. A) ("set[ting] forth the terms and conditions for clients to trade Digital Assets through the Coinbase prime broker execution platform[, which] . . . shall provide Client with access to trade execution and automated trade routing services and Coinbase Execution Services . . . to enable Clients to submit orders . . . to purchase and sell specified Digital Assets").

that USMS dictates the trade execution process and Coinbase provided no evidence in its Notice of Removal that USMS oversees or otherwise controls that process. To the contrary, various provisions in the Agreement expressly state that Coinbase maintains control in this arena. For example:

- Coinbase has "*sole discretion*" to decide the "trading venues" with which it "establish[es] connections," and Coinbase decides how orders are routed to these trading venues to be processed and settled. *Id.* at 17 (Ex. A, § 1) (emphasis added).

- "Coinbase may, *in its sole discretion*, . . . (i) halt or suspend Trading Services, including trading on the Trading Platform or the trading of any Digital Assets or currency, or (ii) impose limits on the amount or size of Client's Orders." *Id.* at 20 (Ex. A, § 5.2) (emphasis added).

- "Coinbase *reserves the right to modify the terms* of any Order Type and the Coinbase Trading Rules *at any time and without prior notice* to Client." *Id.* at 20 (Ex. A, § 6.1) (emphasis added).

- "Coinbase *may modify the terms of, or cancel*, any Order executed on Trading Platform if Coinbase determines *in its sole discretion* that the Order was clearly erroneous according to the Coinbase Trading Rules." *Id.* at 20 (Ex. A, § 6.2) (emphasis added).

Significantly, the Agreement expressly provides that "Coinbase is not acting as a fiduciary in respect of" USMS, *id.* at 22 (Ex. A, § 9), and disclaims any responsibility on Coinbase's part for orders submitted by USMS, *id.* at 4 (§ 6.1) (USMS "assumes responsibility for each transaction in or for its Prime Broker Account"). Further, USMS represents that it "is and shall remain in full compliance with all applicable laws . . . , including U.S. securities laws and regulations, as well as any applicable state and federal laws." *Id.* at 3 (§ 5.2), and Coinbase "may refuse to execute Instructions if . . . such Instructions . . . are contrary to any applicable laws, rules and regulations." *Id.* at 2–3 (§ 4.2).

While Coinbase asserts that it "acts as an agent of the federal government with respect to the sale of . . . cryptoassets," Defs.' Notice ¶ 23, and cites *DeFiore v. SOC LLC*, 85 F.4th 546 (9th Cir. 2023), for the proposition that it may remove this case to federal court because the State's

claims against it "implicate" its duties to USMS under the Prime Broker Agreement, Defs.' Notice ¶¶ 22–25, Coinbase is wrong. First, Coinbase is not "acting under" the direction of USMS because Coinbase's relationship with USMS is a normal business relationship resulting from "an arm's-length business arrangement" under which Coinbase supplies USMS "with widely available commercial products or services[.]" *San Mateo*, 32 F.4th at 757 (citations omitted). Second, Coinbase cannot show a causal connection between the State's claim and "what [it] w[as] asked to do by the Government," *DeFiore*, 85 F.4th at 557 (quoting *Goncalves*, 865 F.3d at 1245), both because Coinbase's obligations to USMS do not require it to execute sales of the Crypto Securities on behalf of USMS to Oregon residents in violation of the Oregon Securities Law, and because the OSL exempts sales by the USMS from the registration requirement. Finally, to remove any doubt, the State has amended its complaint to exclude transactions by or on behalf of the USMS, eliminating any possible causal connection and any colorable federal defense.

### (i)    Coinbase Was Not "Acting Under" USMS.

The Ninth Circuit has identified four factors that courts should consider when analyzing the "acting under" prong. A removing party "acts under" a federal officer when it is:

> (1) working under an officer "in a manner akin to an agency relationship"; (2) being "subject to the officer's close direction, such as acting under the ... 'guidance, or control' of the officer" or having an "unusually close" relationship "involving detailed regulation, monitoring, or supervision"; (3) helping fulfill "basic governmental tasks"; and (4) conducting activities "so closely related to the government's implementation of its federal duties that the . . . person faces 'a significant risk of state-court prejudice.'"

*City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1107 (9th Cir. 2022) (quoting *San Mateo*, 32 F.4th at 756–57 (citing *Watson v. Philip Morris Cos.*, *Inc.*, 551 U.S. 142, 151–53 (2007))). "[A] person is not 'acting under' a federal officer when the person enters into an arm's-length business arrangement with the federal government or supplies it with widely available commercial products or services," *San Mateo*, 32 F.4th at 757, or when the defendant has "only [a] normal commercial

. . . relationship[]" with the government "that do[es] not involve detailed supervision," *Honolulu*, 39 F.4th at 1107.

Under these standards, Coinbase was not "acting under" USMS. None of the four factors are present here. First, the Prime Broker Agreement provides that "Coinbase is *not acting as a fiduciary*" to USMS, ECF 1-3 at 22 (Ex. A, § 9) (emphasis added). A fiduciary relationship is a hallmark of the common-law agency principles the Ninth Circuit has stated are relevant to whether a government contractor acts under a federal officer. *See DeFiore*, 85 F.4th at 556 (9th Cir. 2023). Because Coinbase relies entirely on the Agreement to establish that it is USMS's agent, it fails to establish that its relationship with USMS demonstrates that it acts under a federal officer.

Second, no "close direction" or "guidance, or control" exists here. While Coinbase contends that it manages crypto assets seized by the federal government, Defs.' Notice ¶ 24, USMS determines whether and when to submit orders to sell its crypto assets, including which assets to sell and how many, and has not delegated this duty to Coinbase. *See, e.g.*, *Watson*, 551 U.S. at 157 ("[N]either Congress nor federal agencies normally delegate legal authority to private entities without saying that they are doing so."). Nor does USMS exercise close direction, guidance, or control over the manner in which Coinbase executes orders. As discussed, Coinbase maintains significant control and discretion over the type of orders it will accept from USMS, the way it executes orders, and even whether to execute an order at all.[12] *Supra* at 12–14. This is not meaningfully different from supplying fuel to the Navy or providing the various other

---

[12] *See, e.g.*, ECF 1-3 at 20 (Ex. A, § 5.2) ("Coinbase may, *in its sole discretion*, . . . (i) halt or suspend Trading Services . . . , or (ii) impose limits on the amount or size of Client's Orders.") (emphasis added); *id*. (Ex. A, § 6.1) ("Coinbase *reserves the right to modify the terms* of any Order Type and the Coinbase Trading Rules *at any time and without prior notice* to Client.") (emphasis added); *id.* (Ex. A, § 8.1) ("Coinbase has *sole and absolute discretion* to accept or reject any Order.") (emphasis added); *id.* at 22 (Ex. A, § 12.1) ("Coinbase may, *in its sole discretion*, suspend, restrict or terminate the Client's Trading Services.")  (emphasis added).

commercially available products and services that courts in this Circuit have held evince merely a "normal," arm's-length business relationship. *See, e.g.*, *San Mateo*, 32 F.4th at 758; *Honolulu*, 39 F.4th at 1107.

Third, Coinbase fails to explain how the execution of orders to sell crypto assets constitutes a basic governmental task similar to, for example, "manufacturing weapons of war and administering health benefits to federal employees." *See Cousin v. Healthcare*, No. 22-cv-2040-MMA-DDL, 2024 WL 1184702, at *6 (S.D. Cal. Mar. 19, 2024); *see also, e.g.*, *Honolulu*, 39 F.4th at 1108 ("Congress endorsed oil operations and considered making a national oil company, but that does not show that oil production was a basic governmental task."). In *Cousin*, the defendant healthcare provider argued that it was "acting under" the federal government via its participation in the Meaningful Use Program, which incentivizes and directs healthcare providers to promote access to medical records online. *Cousin*, 2024 WL 1184702, at *3. The court held that defendant did not assist with a basic governmental task even though "receiving incentive payments to drive traffic to its own website may 'help' or 'assist' the federal government 'in some sense of those words.'" *Id.* at *7 (quoting *Watson*, 551 U.S. at 152). Like the defendant in *Cousin*, Coinbase "conflates a government need with what the government wants." *Id.* at *6.

Finally, Coinbase fails to show how providing trade execution services to USMS identical to those it provides to other customers is so closely related to the government's implementation of federal law that it might subject Coinbase to any risk of state court prejudice, much less a significant risk. *See, e.g.*, *San Mateo*, 32 F.4th at 758 ("Supplying gasoline to the Navy for resale to its employees is not an activity so closely related to the government's implementation of federal law that the person faces 'a significant risk of state-court prejudice.'" (quoting *Watson*, 551 U.S. at 152)).

Instead, the Prime Broker Agreement evinces a classic "normal commercial . . . relationship[]" with the government "that do[es] not involve detailed supervision" by the government. *Honolulu*, 39 F.4th at 1107. Accordingly, Coinbase was not acting under USMS.

>    (ii)    **Coinbase Provides No Evidence of a "Causal Connection" between Its Actions on Behalf of USMS and the State's Claims.**

To satisfy the causal nexus prong, a defendant must show "that the challenged acts 'occurred *because of* what [it] w[as] asked to do by the Government.'" *Goncalves*, 865 F.3d at 1245 (emphasis in original) (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008)). Coinbase fails to show a causal connection between Coinbase's actions on behalf of USMS and the State's claims regarding the sale or successful solicitation of unregistered Crypto Securities in violation of the Oregon Securities Law.

First, the Prime Broker Agreement does not establish that USMS asked Coinbase to sell Crypto Securities held by USMS to Oregon residents in violation of the OSL. Because the Agreement expressly provides that Coinbase retains "*sole discretion*" to determine which crypto assets its Coinbase Prime customers, including USMS, may buy and sell through Coinbase's trading platform, ECF 1-3 at 20 (Ex. A, § 6) (emphasis added), Coinbase has no obligation to USMS to make the crypto assets at issue in the State's complaint available for trading at all.[13]

---

[13] If the State prevails on its claims, Coinbase may continue to meet its obligations to USMS without breaching the Agreement in any way by continuing to execute orders submitted by USMS to sell the many crypto assets that are not at issue in the State's Complaint. And, even if Coinbase were obligated to execute orders for Crypto Securities, nothing in the Agreement suggests that it must sell those crypto assets to Oregon residents. Indeed, the Agreement provides that USMS represents that it "is and shall remain in full compliance with all applicable laws . . . , including U.S. securities laws and regulations, as well as any applicable *state* and federal laws . . . ." ECF 1-3 at 3 (§ 5.2) (emphasis added). Thus, the sale of Crypto Securities to Oregon residents in violation of the OSL could in fact breach the terms of the Prime Broker Agreement.

Second, transactions by a "marshal" are exempt from registration under the Oregon Securities Law. Or. Rev. Stat. § 59.035(1); *see also id.* § 59.055(2).[14] To avoid any doubt about whether the State intends to pursue claims with respect to transactions by or on behalf of USMS, the State has filed an amended complaint expressly waiving its claims as to transactions by or on behalf of "marshals," including USMS.

> (iii)   **The Amended Complaint Clarifies Beyond Dispute That the State's Claims Do Not Address Any Sale of Crypto Securities By or on Behalf of the Federal Government.**

"[W]hen the federal officer removal statute is at issue, a plaintiff may expressly waive claims that would give rise to potential federal defenses." *Marcher v. Air and Liquid Sys. Corp.*, 2:22-cv-00059-RGK-MRW, 2022 WL 562268, at *2 (C.D. Cal. Feb. 24, 2022). Such a waiver is "sufficient to eviscerate [a defendant's] grounds for removal," *Hukkanen v. Air and Liquid Sys. Corp.*, No. CV 17-2227-JFW, 2017 WL 1217075, at *2 (C.D. Cal. Mar. 31, 2017), whether the waiver is made before or after the case is removed to a federal court. *Fisher v. Asbestos Corp.*, No. 2:14-CV-02338-WGY, 2014 WL 3752020, at *5 (C.D. Cal. July 30, 2014). "When a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025).

The State's Amended Complaint makes clear that its claims do not arise from any sale of Crypto Securities by or on behalf of USMS. The Amended Complaint states explicitly and unambiguously that "the allegations and claims asserted in this Complaint do not include and

---

[14] The State notes that, while Coinbase asserts, without support, that it has executed orders submitted by USMS to sell some of the Crypto Securities, *see* Defs.' Notice ¶ 24, Coinbase does not claim, let alone demonstrate, that any of those Crypto Securities were sold to an Oregon resident.

expressly exclude any sale of Crypto Securities by or on behalf of the U.S. Marshals Service." Am. Compl. ¶ 503.

The State's disclaimer is effective, and should be given effect, to demonstrate that there is no federal officer removal jurisdiction over this case. *See Fisher*, 2014 WL 3752020, at *3 (explaining that, after the plaintiff's post-removal waiver, "[t]o deny remand . . . would affirm [the defendant's] right to assert a defense against a claim that does not exist, an absurd result"). Even without this disclaimer, Coinbase's attempted removal under the federal officer removal statute fails for multiple independent reasons. But even if Coinbase could establish that removal was proper, this case must nonetheless be remanded to state court in light of the State's Amended Complaint. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *Royal Canin*, 604 U.S. at 28 ("federal courts are courts of limited jurisdiction: When they do not have (or no longer have) authorization to resolve a suit, they must hand it over").

> **b.    Coinbase Cannot Assert a Colorable Federal Defense Arising out of the Services It Provides to USMS.**

Removal under the federal officer removal statute is also improper because Coinbase has not asserted defenses that are colorable and "aris[e] out of [its] official duties." *Honolulu*, 39 F.4th at 1110 (quoting *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981)). A colorable federal defense "does not need to be meritorious or ultimately successful, but it must be plausible and legitimate." *Nevada v. Optum, Inc.*, No. 2:24-CV-00493-RFB-DJA, 2025 WL 947041, at *7 (D. Nev. Mar. 30, 2025) (citing *Honolulu*, 39 F.4th 1101).

Three of the federal defenses Coinbase asserts—lack of personal jurisdiction, failure to state a claim on the grounds that the Crypto Securities allegedly are not "investment contracts" under the federal Securities Exchange Act of 1934 ("Exchange Act"), and violation of "the fair

notice requirements of the federal Due Process Clause"—do not support removal because they do not depend on whether Coinbase was acting under the direction of USMS and do not flow from Coinbase's purported official duties. And Coinbase fails to establish that any of the defenses it asserts—the three aforementioned defenses, as well as the Supremacy Clause defense—constitutes a colorable federal defense.

> ### (i)      Coinbase's First Three Defenses Do Not Arise out of "Official Duties."

Coinbase's first three defenses have nothing to do with the actions Coinbase purportedly took at the direction of USMS. A defense arises out of "official duties" when the factual basis for the defense "flow[s] from" complained-of actions or omissions taken on behalf of the federal government. *See Honolulu*, 39 F.4th at 1110; *see also Mesa v. California*, 489 U.S. 121, 130 (1989) (federal officer removal statute applies "only when the person defending caused it to appear that his defense was that[,] in doing the acts charged[,] he was doing no more than his duty." (quoting *Gay v. Ruff*, 292 U.S. 25, 33 (1934))).

Common sense dictates that Coinbase's purported lack of sufficient minimum contacts with Oregon does not "flow from" the services that Coinbase provides to USMS. Coinbase either has sufficient minimum contacts with Oregon, or it doesn't. Even if Coinbase had alleged a colorable personal jurisdiction defense—which it has not[15]—that defense would exist regardless of Coinbase's contractual relationship with USMS. This procedural defense is premised on a purported lack of sufficient minimum contacts between Coinbase and Oregon (or, alternatively, the State's purported failure to sufficiently allege the existence of minimum contacts), not any

---

[15] Coinbase alleges no facts to support its contention that it lacks minimum contacts with Oregon, nor does it explain why the Complaint is deficient. Its "conclusory statements and general propositions of law do not make [its] defense[] colorable." *Honolulu*, 39 F.4th at 1110.

"duty [to USMS] which prompted" Coinbase's purported lack of minimum contacts with Oregon. *See Application of Donovan*, 601 F. Supp. 574, 579 (S.D.N.Y. 1985).

Coinbase's appeal to the Exchange Act as a defense also fails. This rehashing of Coinbase's unavailing federal question jurisdiction argument effectively contends that the State fails to state a claim because—according to Coinbase—the Crypto Securities are not securities "under the Exchange Act's framework." Defs.' Notice ¶ 20. But, as with the personal jurisdiction defense, this supposed pleading defect has nothing to do with Coinbase's execution of orders on behalf of USMS under the Prime Broker Agreement and has no relevance to the question of whether Coinbase was performing its duty under the direction of a federal officer in executing trades on behalf of USMS. *See Mesa*, 489 U.S. at 130 ("in doing the acts charged[, Coinbase] was doing no more than [its] duty") (quotation marks omitted). Either the transactions are investment contracts under federal law, or they aren't—either way, the determination does not "arise out of" Coinbase's execution of sale orders on behalf of USMS.

The Exchange Act defense also is implausible, as the State asserts no claims under that Act. As discussed above, even if Coinbase were correct that the alleged Crypto Securities do not "qualify as 'investment contracts' under the Exchange Act's framework," *see* ECF 1 ¶ 26(b), this would not defeat the State's claims. *See* discussion *supra* Section III.C.1.

Coinbase's Due Process defense also does not arise from its purported official duties. Oregon's alleged failure to give fair notice of forbidden conduct cannot arise from Coinbase's official duties because such failure, if it exists, is not related to Coinbase's execution of sale orders submitted by USMS. And Coinbase does not contend that the government ordered it to violate Oregon's securities laws or that its duties under the Prime Broker Agreement otherwise prompted it to solicit, or participate and materially aid in, the sale of unregistered securities in Oregon.

*Honolulu*, 39 F.4th at 1110. Indeed, the defense depends on the *State's* duties and conduct (under the Fourteenth Amendment), not on Coinbase's actions. This mirrors a similar First Amendment defense previously rejected by the Ninth Circuit in *Honolulu*. *Id.* (finding the defense did not arise out of the defendants' relationships with the federal government, because the defendants "d[id] not contend that the government ordered their allegedly deceptive acts").

Nor is Coinbase's Due Process defense colorable. Far from "attempt[ing] to impose retrospective sanctions in direct conflict with previous guidance," Defs.' Notice ¶ 26(c), the OSL was originally enacted in 1939, so Defendants can have no legitimate argument that they were not on notice that certain crypto assets may constitute securities under the OSL, such that the sale of these securities may violate the OSL if they are not registered, as further highlighted by Coinbase's own admissions and assertions about federal securities regulation of crypto.[16]

### (ii)    Coinbase's Supremacy Clause Defense Is Not Colorable.

Coinbase alleges that Oregon's action violates the Supremacy Clause because the State's claims are "preempted and otherwise unsustainable under the intergovernmental immunity doctrine." Defs.' Notice ¶ 26(d). The Supremacy Clause "generally immunizes the Federal Government from state laws that directly regulate or discriminate against it," *United States v. Washington*, 596 U.S. 832, 835 (2022), and "[m]odern Supremacy Clause cases discuss two separate doctrines: intergovernmental immunity and preemption," *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 758 (9th Cir. 2022). Neither doctrine provides a plausible defense to Coinbase here.

---

[16] *See* Defs.' Notice ¶ 2 ("Federal policymakers have grappled for years with how to apply longstanding federal statutes and regulations to novel digital-asset technologies."); *id.* (the SEC began issuing public guidance in 2017 on when crypto assets might be subject to regulation as securities); *id.* ¶ 3 (Coinbase "invested heavily in efforts to comply with this evolving federal landscape, including by developing procedures to identify and exclude from listing on its platform any digital assets that might be deemed securities under the regulatory guidance").

"[I]ntergovernmental immunity attaches only to state laws that discriminate against the federal government and burden it in some way." *United States v. California*, 921 F.3d 865, 880 (9th Cir. 2019). Intergovernmental immunity "is not implicated when a state merely references or even singles out federal activities in an otherwise innocuous enactment," *id.* at 881, and "[o]nly those provisions that impose an additional . . . burden exclusively on the federal government are invalid under the doctrine," *Id.* at 884.

The State brings claims under the Oregon Securities Law, which neither directly regulates nor discriminates against the federal government, either facially or in effect, as the laws operate against *all* sellers of securities in Oregon. *See United States v. King Cnty., Wash.*, 122 F.4th 740, 757 (9th Cir. 2024) (executive order facially discriminated against the United States when it specifically barred private fixed based operators at airports from servicing ICE charter flights).

Nor does the OSL have a discriminatory effect. The OSL neither restricts the federal government's ability to sell the digital assets at issue any more than they restrict others from selling those assets, nor does it "treat[] someone else better than [it] treat[s] [USMS or those with whom it deals]." *California*, 921 F.3d at 881 (quoting *Washington v. United States*, 460 U.S. 536, 544-45 (1983)); *see also In re Nat'l Sec. Agency Telecomm. Recs. Litig.*, 633 F. Supp. 2d 892, 904 (N.D. Cal. 2007) (finding no discriminatory effect, even where an investigation targeted NSA call records, because "the regulatory regime as whole treat[ed] any unauthorized disclosure the same"). In fact, the OSL does not restrict USMS at all because, as discussed above, transactions by a marshal are exempt from the OSL's prohibition on the sale of unregistered securities. *See* Or. Rev. Stat. § 59.035(1). As a result, Coinbase has not asserted a colorable Supremacy Clause defense under the intergovernmental immunity doctrine.

Coinbase also fails to assert a Supremacy Clause defense under the preemption doctrine. Federal conflict preemption exists "where compliance with both the federal and state regulations is a physical impossibility, or when the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Fireman's Fund Ins. Co. v. City of Lodi, Cal.*, 302 F.3d 928, 943 (9th Cir. 2002) (quotation marks omitted).

Because it is well established that "state regulation may co-exist with that offered under the federal securities laws," impossibility preemption does not apply here. *See* discussions *supra* Sections III.A and III.C.1.b. Coinbase instead appears to argue that Oregon's claims are barred by obstacle preemption, which "attaches . . . only if [a state law] imposes an obstructive, not-insignificant burden on federal activities," *California*, 921 F.3d at 880, such that it "undermines the intended purpose and 'natural effect' of the federal law," *Mont. Med. Ass'n v. Knudsen*, 119 F.4th 618, 623 (9th Cir. 2024) (quoting *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000)). Specifically, Coinbase argues that the State's claims under the OSL would "improperly impede" USMS's ability to do its work under the Asset Forfeiture Program ("AFP"). Defs.' Notice ¶ 26(d).

The one case Coinbase cites—*Geo Group*—stands in direct contrast to the facts at issue here. Coinbase cannot plausibly allege that Oregon's action seeks to give the State a "virtual power of review," *Geo Group*, 50 F.4th at 758, over the types of digital assets that USMS can sell under its contract with Coinbase because that power already belongs to Coinbase under the express terms of the Prime Broker Agreement. ECF 1-3 at 20 (Ex. A, § 6) (providing Coinbase "sole discretion" to determine "which Digital Assets to support").

Further, the OSL does not and cannot impede USMS's sales of crypto assets because transactions by a marshal are exempt from the OSL's prohibition on the sale of unregistered

securities. *See* Or. Rev. Stat. § 59.035(1). But even if these transactions by USMS were not exempt, nothing in the AFP-creating regime evinces an intent to override state laws regulating the sale of certain property seized by the federal government. Although "there is a strong governmental interest in obtaining full recovery of all forfeitable assets" by way of the AFP, *Kaley v. United States*, 571 U.S. 320, 323 (2014), there is no similar governmental interest in selling all the assets that it recovers. Nor is there any statutory requirement for USMS to sell all forfeited digital assets, let alone sell them to the general public or in violation of state law. *See* 28 C.F.R. § 0.111(i) (detailing USMS responsibilities as "[m]aintenance of custody, management control, and disposal of property and money seized or forfeited"); 21 U.S.C. § 881(e)(1)(B) ("The Attorney General may . . . sell . . . any forfeited property which is not required to be destroyed by law and which is not harmful to the public"); 39 C.F.R. § 233.7(q) (allowing "forfeited property" to "be moved to and sold in such other district" "[i]f the laws of a state in which an article of forfeited property is located prohibit the sale . . . of such property"); ECF 1-3 at 3 (Prime Broker Agreement requires USMS to "remain in full compliance with all applicable laws, rules, and regulations in each jurisdiction in which [it] operates or otherwise uses the Prime Broker Services, including . . . any applicable state . . . laws"). Because the State's claims under the OSL do not create an "obstructive, not-insignificant burden" on USMS's ability to do its work under the AFP, *see California*, 921 F.3d at 880, Coinbase fails to assert a colorable Supremacy Clause defense under the preemption doctrine.[17]

---

[17] In any event, the State has now expressly waived claims arising from the sale of Crypto Assets by or on behalf of USMS. *See, supra,* § III.C.2.a.(iii).

For each of the foregoing independent reasons, Coinbase fails to carry its burden to establish that this Court has jurisdiction under the federal officer removal statute, so removal pursuant to 28 U.S.C. § 1442(a)(1) is improper.

### 3.    The Court Should Award the State Its Reasonable Attorney Fees and Costs.

28 U.S.C. § 1447(c) provides that, when remanding a case, a court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." As shown by the discussion above, not only do Coinbase's arguments lack merit, clear law demonstrates that Coinbase had no objectively reasonable basis for seeking removal either based on federal question jurisdiction or under the federal officer removal statute. Accordingly, the State is entitled to an award of its reasonable attorney fees and costs incurred in connection with this motion. *See Martin v. Franklin Corp.*, 546 U.S. 132, 141 (2005) (courts generally "may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal"); *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1066 (9th Cir. 2008) (courts in the Ninth Circuit apply the "objectively reasonable standard by looking to the clarity of the law at the time of removal").

## IV.    CONCLUSION

For the reasons set forth above, this Court does not have jurisdiction over this case. The Court should remand the case to the Circuit Court of the State of Oregon for Multnomah County and award the State its reasonable attorney fees and costs under 28 U.S.C. § 1447(c).

RESPECTFULLY SUBMITTED this 2nd day of July, 2025.

Dan Rayfield
Attorney General

BRIAN A. DE HAAN, OSB#155251
Senior Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Tel.: 971-673-1880
Fax: 971-673-1888
Email: brian.a.dehaan@doj.oregon.gov

*Of Attorneys for Plaintiff*

*s/ Keil M. Mueller*
Keil M. Mueller, OSB No. 085535
Jennifer S. Wagner, OSB No. 024470
Yoona Park, OSB No. 077095
Norjmoo Battulga, OSB No. 242037
**KELLER ROHRBACK L.L.P.**
601 S.W. Second Avenue, Suite 1900
Portland, OR 97204
(971) 253-4600
Fax (206) 623-3384
kmueller@kellerrohrback.com
jwagner@kellerrohrback.com
ypark@kellerrohrback.com
nbattulga@kellerrohrback.com

Julie G. Reiser (*pro hac vice* pending)
Margaret (Emmy) Wydman (*pro hac vice* pending)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, N.W., Suite 800
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
jreiser@cohenmilstein.com
ewydman@cohenmilstein.com

Christopher J. Bateman (*pro hac vice* pending)
**COHEN MILSTEIN SELLERS & TOLL PLLC**
88 Pine St., 14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
cbateman@cohenmilstein.com

***Special Assistant Attorneys General for Plaintiff***

## CERTIFICATE OF COMPLIANCE

This brief complies with the applicable page -count limitation under LR 7-2(b) because it does not exceed 35 pages.

Dated:  July 2, 2025                                   *s/ Keil M. Mueller*
                                                       Keil M. Mueller, OSB No. 085535