Keil M. Mueller, OSB No. 085535
Jennifer S. Wagner, OSB No. 024470
Yoona Park, OSB No. 077095
Norjmoo Battulga, OSB No. 242037
KELLER ROHRBACK L.L.P.
601 S.W. Second Avenue, Suite 1900
Portland, OR 97204
Tel. (971) 253-4600 Fax (206) 623-3384
kmueller@kellerrohrback.com
jwagner@kellerrohrback.com
ypark@kellerrohrback.com
nbattulga@kellerrohrback.com

*Special Assistant Attorneys General for Plaintiff*
[Additional Counsel listed on Signature Page]

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

DIVISION PORTLAND

| | |
|---|---|
| THE STATE OF OREGON, EX REL. DAN RAYFIELD, ATTORNEY GENERAL FOR THE STATE OF OREGON, | No. 3:25-cv-00952-JR |
| Plaintiff, | **PLAINTIFF THE STATE OF OREGON'S RESPONSE TO DEFENDANTS' OBJECTIONS TO FINDINGS & RECOMMENDATION** |
| v. | |
| COINBASE, INC. AND COINBASE GLOBAL, INC., | |
| Defendants. | |

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................1

II.    ARGUMENT .......................................................................................3

    A.    Judge Russo Correctly Found that Coinbase Fails to Establish
    Federal Question Jurisdiction. .......................................................4

        1.    The F&R Rightly Concluded that No Federal Issue is
        Necessarily Raised..............................................................4

        2.    The F&R Properly Evaluated the State-Based Interests at
        Stake. .................................................................................7

    B.    Judge Russo Correctly Found that Coinbase Fails to Establish
    Jurisdiction under the Federal Officer Removal Statute. ...............10

        1.    Coinbase Failed to Demonstrate a Causal Nexus Between
        the State's Claim and the Services Coinbase Provides to the
        USMS. ...........................................................................10

            a.    Judge Russo Correctly Found the State's Waiver
            Eliminates Any Possible Causal Connection. .......11

            b.    The Ninth Circuit's Recent Decision in *Express
            Scripts* Further Supports Remand. ........................12

            c.    Defendants' Other Critiques of the F&R Fall Flat.14

        2.    Judge Russo Was Correct in Finding that Coinbase Fails to
         Assert a Colorable Defense Arising from Its Contacts with
         the USMS...................................................................17

            a.    Defendants' Personal Jurisdiction and Due Process
            Defenses Do Not Relate to Their Federal Work, and
            Are Not Colorable.................................................17

            b.    Defendants' Preemption and Supremacy Clause
            Defenses Are Not Colorable.................................18

III.    CONCLUSION ...................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arizona v. Manypenny*,
  451 U.S. 232 (1981) ........................................................................17

*Badger v. Paulson Inv. Co.*,
  311 Or. 14 (1991)..............................................................................6

*Bennett v. MIS Corp.*,
  607 F.3d 1076 (6th Cir. 2010) ........................................................16

*Brook as Tr. of David N. II Tr. v. McCormley*,
  837 F. App'x 433 (9th Cir. 2020) ....................................................6

*California by & through Harrison v. Express Scripts, Inc.*,
  No. 24-1972, 2025 WL 2586648 (9th Cir. Sept. 8, 2025).........12, 13, 14

*City & Cnty. of Honolulu v. Sunoco LP*,
  39 F.4th 1101 (9th Cir 2022) ..........................................................17

*Ciuffitelli for Tr. of Ciuffitelli Revocable Tr. v. Deloitte & Touche LLP*,
  2017 WL 2927481 (D. Or. Apr. 10), *adopted by* 2017 WL 2927150 (D. Or.
  July 5, 2017)......................................................................................8

*Cnty. of San Mateo v. Chevron Corp.*,
  32 F.4th 733 (9th Cir. 2022) ...................................................3, 10, 11

*In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def.
Ass'n of Phila.*,
  790 F.3d 457 (3d Cir. 2015) ......................................................14, 15

*Computer Concepts, Inc. Profit Sharing Plan v. Brandt*,
  98 Or. App. 618 (1989), *aff'd sub nom. Computer Concepts, Inc.*, 310 Or. 706
  (1990) .................................................................................................6

*Computer Concepts, Inc. v. Brandt*,
  310 Or. 706 (1990)............................................................................5

*Connecticut v. McGraw Hill Cos., Inc.*,
  No. 3:13-CV-311 SRU, 2013 WL 1759864 (D. Conn. Apr. 24, 2013) ..................8

*DeFiore v. SOC LLC*,
  85 F.4th 546 (9th Cir. 2023) .....................................................14, 15, 16

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
    547 U.S. 677 (2006) ................................................................................. 9

*Geo Grp., Inc. v. Newsom*,
    50 F.4th 745 (9th Cir. 2022) ........................................................... 18, 19

*Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*,
    865 F. 3d 1237 (9th Cir. 2017) ............................................................. 11

*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*,
    545 U.S. 308 (2005) ................................................................................. 4

*Gunn v. Minton*,
    568 U.S. 251 (2013) ............................................................................. 4, 7

*Hornish v. King Cnty.*,
    899 F.3d 680 (9th Cir. 2018) .................................................................. 8

*Isaacson v. Dow Chem. Co.*,
    517 F.3d 129 (2d Cir. 2008) ................................................................. 11

*Latiolais v. Huntington Ingalls, Inc.*,
    951 F.3d 286 (5th Cir. 2020) (en banc) .............................................. 14

*Matsushita Elec. Indus. Co. v. Epstein*,
    516 U.S. 367 (1996) ................................................................................. 8

*Moore-Thomas v. Alaska Airlines, Inc.*,
    553 F.3d 1241 (9th Cir. 2009) ................................................................ 4

*Nevada v. Bank of Am. Corp.*,
    672 F.3d 661 (9th Cir. 2012) .................................................................. 9

*New York* v. *Arm or Ally, LLC*,
    644 F. Supp. 3d 70 (S.D.N.Y. 2022) ..................................................... 5

*Plaquemines Par. v. BP Am. Prod. Co.*,
    103 F.4th 324 (5th Cir. 2024) .................................................. 14, 15, 16

*Pratt v. Kross*,
    276 Or. 483 (1976) .................................................................................. 5

*Ranck v. Mt. Hood Cable Regulatory Commission*,
    2017 WL 1752954 (D. Or. May 2, 2017) ............................................. 7

*Riggs v. Airbus Helicopters, Inc.*,
    939 F.3d 981 (9th Cir. 2019) ............................................................... 10

*Ritter v. Thigpen*,
828 F.2d 662 (11th Cir. 1987) ...................................................................15

*Royal Canin U.S.A., Inc. v. Wullschleger*,
604 U.S. 22 (2025) ...................................................................................11

*Sawyer* v. *Foster Wheeler LLC*,
860 F.3d 249 (4th Cir. 2017) ............................................................ 14, 15

*SEC v. W.J. Howey Company*,
328 U.S. 293 (1946) ...................................................................................6

*In re Standard & Poor's Rating Agency Litig.*,
23 F. Supp. 3d 378 (S.D.N.Y. 2014) ..........................................................8

*United States v. California*,
921 F.3d 865 (9th Cir. 2019) .....................................................................19

*United States v. Washington*,
596 U.S. 832 (2022) .................................................................................19

**Statutes**

21 U.S.C. § 903........................................................................................20

28 U.S.C. § 1442.....................................................................................16

28 U.S.C. § 1442(a)(1) ...................................................................... 13, 14

Or. Rev. Stat. Ann. § 59.035(1) ........................................................ 11, 19

Or. Rev. Stat. Ann. § 59.055 ............................................................. 11, 18

Oregon Securities Law ("OSL")...................................................... *passim*

**Rules**

Fed. R. Civ. P. 72(b)(3)..............................................................................3

# I.      INTRODUCTION

Over the course of this litigation, Coinbase has tried and tried again to recast Plaintiff the State of Oregon's ("the State" or "Oregon") *parens patriae* action—originally filed in Multnomah County Circuit Court, and brought under a single state-law cause of action pursuant to the Oregon Securities Law ("OSL")—as a proxy for federal law issues, grasping for a way to strip the Oregon courts of jurisdiction over it.

In recommending that the Court grant Oregon's motion to remand this case to state court, Judge Russo thoroughly addressed and rightly rejected Coinbase's fanciful arguments—arguments that strain credulity and attempt to twist this case into something it is not. In so doing, Judge Russo faithfully applied the proper legal standards and relied on long-settled precedent to determine that Coinbase's removal effort fails under either of its asserted jurisdictional theories.

Specifically, Judge Russo correctly found that the State's OSL claim does not necessarily raise an issue of federal law because unambiguous precedent from the Oregon Supreme Court makes clear that the federal securities laws "do not bind" Oregon courts' interpretation of the OSL and, in fact, "Oregon can independently determine what constitutes an investment contract pursuant to the OSL *without deference to or the presumption of primacy of*" federal securities law. Findings and Recommendation ("F&R") at 8, ECF No. 46 (emphasis added). She further recognized that the "state-based interests" implicated in this state-law litigation—namely, "whether the transactions at issue are 'investment contracts' under the OSL"—are more appropriately adjudicated in Oregon state courts. *See id.* at 6–9. Judge Russo also properly declined Coinbase's claim of federal officer jurisdiction, principally because the State's claim *expressly excludes* any sales by the U.S. Marshals Service ("USMS") and therefore does not "emanate from the sale of any cryptosecurities by or on behalf of the USMS," eliminating any causal nexus

between that claim and Coinbase's actions pursuant to its contracts with the USMS. *Id.* at 15–18. Judge Russo correctly found that Coinbase's arguments that the State's claim nevertheless somehow implicates its obligations to the USMS were far too attenuated and untethered from the evidence—namely, the actual contracts between Coinbase and the USMS (which Coinbase itself introduced)—and the State's complaint. *See id.* As a result, the F&R properly concluded that no basis for federal jurisdiction exists and recommended granting the State's motion to remand.

Reiterating the same flawed arguments, Coinbase takes aim at Judge Russo's sound and well-supported findings and recommendations rejecting both of its jurisdictional arguments. As to federal question jurisdiction, Coinbase argues that the F&R allows Oregon to "escape a federal court deci[sion]" that allegedly "decid[es] [the] issue in this case"—that is, "whether certain digital-asset transactions . . . are . . . securities under state law"—and that Judge Russo "misconstrue[d] the substantial federal interests at stake." Defs.' Obj. to F&R ("Obj.") at 2, 15, ECF No. 48. Not so. Judge Russo correctly recognized that the Oregon Supreme Court is not bound by federal law in interpreting the OSL and that Oregon courts have at times deviated from the federal definition of an investment contract. Similarly, Judge Russo properly framed this case as a state attorney general's "enforce[ment of] a state-specific regulatory scheme," primarily implicating a state's interest in "protecting state residents." *Id.* at 15; F&R at 9.

And as to federal officer jurisdiction, Coinbase argues that the F&R applied an improper causal nexus test, insists that Judge Russo was obligated to accept its self-serving characterization of its contracts with the USMS, and repeats its failed effort to assert a colorable federal defense arising out of its official duties. But Judge Russo properly applied Ninth Circuit law in rejecting Coinbase's attempt to conjure an obligation it purportedly owed to the USMS—but wholly absent from the contracts at issue—to allow Oregonians to engage in unrestricted trading of the Crypto

Securities with entities other than the USMS. And Coinbase's federal defense arguments still fail because, as Judge Russo found, the defenses it asserts are not colorable or do not arise out of Coinbase's official duties, or in some cases both. F&R at 18 n.5; *see also* Pl.'s Mot. to Remand ("Mot.") at 19–25, ECF No. 19; Pl.'s Reply In Support of Mot. to Remand ("Reply") at 23–29, ECF No. 31.

Setting aside Coinbase's mischaracterizations of both the procedural history and the State's motivation in bringing this action, its substantive challenges to the F&R are without merit. For the reasons the State has previously explained and elaborates on below—reasons Judge Russo agreed with in full—the F&R applied the proper legal standards as to both jurisdictional grounds and reached the proper conclusions on both. Accordingly, because Coinbase failed to bear its "burden of establishing jurisdiction exists" on either federal question or federal officer grounds, F&R at 4 (citations omitted), the Court should overrule Coinbase's objections on both grounds, adopt the F&R in full, and remand the case to the Circuit Court of the State of Oregon for Multnomah County.

## II.    ARGUMENT

When presented with proper objections to a magistrate judge's findings and recommendation, the district court reviews those portions of the disposition *de novo*. FED. R. CIV. P. 72(b)(3). In context of a motion to remand, the district court must determine whether the party opposing the motion to remand has met its burden of establishing that federal jurisdiction exists. *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 746 (9th Cir. 2022) ('The defendant has the burden of proving by a preponderance of the evidence that the requirements for removal jurisdiction have been met.").

A.    **Judge Russo Correctly Found that Coinbase Fails to Establish Federal Question Jurisdiction.**

Coinbase's attempt to invoke federal question jurisdiction depends on its ability to show that this case involves a federal issue that is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)). When applying these factors, courts in the Ninth Circuit strictly construe the removal statute against federal jurisdiction, such that "any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citation omitted).

In line with this decree, Judge Russo agreed with Oregon that at least three of the four relevant factors do not support removal of this case, and therefore determined that "Defendants failed to carry their burden in establishing that plaintiff's claim arises under federal law." F&R at 9. Judge Russo's findings were fully supported by the applicable law, including federal question case law, governing precedent from the Oregon Supreme Court concerning the underlying claim at issue in this case, and federal law explaining the well-established role of state blue sky laws in regulating securities in this country. In arguing otherwise, Coinbase simply repackages the same mistaken arguments that Judge Russo rejected.

As none of these arguments undermine Judge Russo's conclusions, the Court should adopt her conclusion that this action was not properly removed under *Grable*.

1.    **The F&R Rightly Concluded that No Federal Issue is Necessarily Raised.**

In evaluating the first factor, Judge Russo correctly concluded that this action does not "necessarily raise" a federal issue as "[i]t is beyond dispute that Oregon courts have not strictly

followed the [federal law] test in determining what constitutes an 'investment contract' under the OSL," and that, in fact, "Oregon has leeway to depart from federal authority in effectuating the broad 'remedial purposes of Oregon's Blue Sky laws.'" F&R at 6–7. Coinbase disagrees, again arguing in response that "Oregon's so-called 'modified' test *is* the federal standard" as, in its view, "[t]he Oregon Securities Law under which the Attorney General's claims arise applies to 'investment contracts,' which the Oregon Supreme Court has held has the same meaning as under federal law[.]" Obj. at 14–15. But Coinbase's argument is misplaced on several levels. As the State explained, and Judge Russo agreed, "the Crypto Securities can be investment contracts under [the Oregon standard] even if they would not be investment contracts under [the federal test]," so the interpretation of the OSL does not turn on—let alone necessarily implicate—any federal standard.[1] Mot. at 7; F&R at 8.

To be sure, neither Oregon nor Judge Russo disagrees that Oregon courts "may look to federal cases for guidance in interpreting the meaning of 'investment contract'" under Oregon law. Mot. at 7 (quoting *Computer Concepts, Inc. v. Brandt*, 310 Or. 706, 714 n.7 (1990)); F&R at 7 ("Oregon has taken guidance from certain federal sources of law in defining an investment contract under the OSL"). Coinbase nonetheless repeats its groundless assertion that "the Oregon Supreme Court in *Pratt* [*v. Kross*, 276 Or. 483 (1976)] *bound* Oregon courts to apply the federal standard[.]" Obj. at 15 (emphasis added). But, as Judge Russo correctly found, this both ignores and directly conflicts with Oregon Supreme Court precedent explaining that even where Oregon courts take

---

[1] Coinbase's argument that *New York* v. *Arm or Ally, LLC*, 644 F. Supp. 3d 70 (S.D.N.Y. 2022), supports its position depends on adopting its view that the OSL necessarily incorporates the federal test for an investment contract, as the New York statute at issue in *Arm or Ally* directly incorporated federal law. But as Judge Russo correctly recognized, the OSL does not do that, so this argument fails. F&R at 6; *see* Reply at 3 n.1.

guidance from federal courts as to the interpretation of the OSL, those federal decisions "*do not bind*" the court, including as to what constitutes an investment contract. Mot. at 7–8 (quoting *Badger v. Paulson Inv. Co.*, 311 Or. 14, 21 (1991) (emphasis added)); F&R at 7–8.

Coinbase also takes issue with the F&R's acknowledgment of the "risk capital test"—an alternative test that Oregon courts have at times used to define an investment contract under the OSL. Obj. at 14; *see* F&R at 7. Coinbase claims the test is a "dead letter" and that the State does not "seriously contend that it applies in this action." Obj. at 14. Notably, Coinbase cites no authority for the former contention, nor has the Oregon Supreme Court ever held this. And as to the latter argument, the State need not explicitly invoke the risk capital test in its complaint in order for the Court to acknowledge—just as Judge Russo did—the existence of a state test that departs from the federal test under *SEC v. W.J. Howey Company*, 328 U.S. 293 (1946), in different respects than the Oregon test under *Pratt*.[2] Ultimately, Oregon courts adopted the risk capital test "precisely in order to avoid the limitations of the *Howey* test[,]" demonstrating that the Oregon courts are not bound by the federal investment contract standard. Reply at 4 (quoting *Computer Concepts, Inc. Profit Sharing Plan v. Brandt*, 98 Or. App. 618, 624 n.7 (1989), *aff'd sub nom. Computer Concepts, Inc.*, 310 Or. 706); F&R at 7.

---

[2] Coinbase's contention that "there is no claim here—nor could there be—that any person trading on Coinbase's secondary market platform contributes capital to any enterprise," Obj. at 14 n.12, like its other arguments concerning the risk capital test, is a new argument that Coinbase did not raise before Judge Russo, and is therefore waived. *See Brook as Tr. of David N. II Tr. v. McCormley*, 837 F. App'x 433, 436 (9th Cir. 2020) (finding no abuse of discretion where district court refused to consider arguments could have been but were not raised before the magistrate judge). In any event, Coinbase's contention relies on a factual inference—that no purchases on Coinbase's anonymous trading platform contributed to the capital raising efforts of the enterprises that issued these Securities (and potentially sold them directly or through intermediaries to Oregon purchasers on Coinbase)—that has no basis in the State's complaint, will be disputed at trial, and is improper at the pleading stage.

In short, Coinbase's theory that this action necessarily raises a federal issue depends on its misreading of governing Oregon precedent and its mistaken contention that the OSL necessarily follows federal law as to the definition of an investment contract. Judge Russo was correct to reject this argument. F&R at 6–7; *see* Reply at 3–5, 3 n.1; *see also* Mot. at 6–7.

### 2.    The F&R Properly Evaluated the State-Based Interests at Stake.

Judge Russo also rightly dismissed Coinbase's arguments as to *Grable*'s third and fourth requirements for federal question jurisdiction, *i.e.* the requirements that the purported federal issue be "substantial" such that it is "important[t] . . . to the federal system as a whole" and that the alleged federal issue be "capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn,* 568 U.S. at 258, 260. Finding that "the interest at stake [here] is state-based, not federal," the F&R correctly concluded that neither factor counsels in favor of removal. F&R at 9.

As Oregon has consistently emphasized throughout this litigation, the State's *parens patriae* action "alleges only state law causes of action, brought to protect [its] residents," Mot. at 10,[3] arising out of Oregon's "special responsibility" to determine whether its citizens face the risks and potential harms of the sale of unregistered securities under its state-specific statute. Reply at 8. In recognizing as much, Judge Russo properly dispelled Coinbase's alarmist allegations about the purported "wide-ranging consequences for the regulation of all nationwide digital-asset platforms" that may result from this case. F&R at 8–9 (emphasizing "the Oregon Attorney General's interest in enforcing a state-specific regulatory scheme and in protecting state

---

[3] Coinbase's reliance on *Ranck v. Mt. Hood Cable Regulatory Commission* to warn of the alleged dangers of allowing "disparate state courts to establish different standards" is misplaced, as *Ranck* involved purely *federal* statutory claims. Obj. at 16–17 (quoting *Ranck*, No. 3:16-CV-02409-AA, 2017 WL 1752954, at *3 (D. Or. May 2, 2017)).

residents"). In so doing, the F&R reaffirms that an interest is not substantial only because the defendant has a nationwide presence. F&R at 8–9 (citing *In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 413 (S.D.N.Y. 2014)); *see* Reply at 6 (citing *Hornish v. King Cnty.*, 899 F.3d 680, 690 (9th Cir. 2018)).

In response, Coinbase simply repeats its logistical point that the transactions at issue take place on Coinbase's nationwide platform that has a "reach far beyond Oregon's borders." Obj. at 16. But this does not, and cannot, counter the plain rule that, "with few exceptions, the doors to federal court [do] not swing open merely because a party has a federal presence[.]" *In re Standard & Poors*, 23 F. Supp. 3d at 414 (citing *Connecticut v. McGraw Hill Cos., Inc.*, No. 3:13-CV-311 SRU, 2013 WL 1759864 at \*4–5 (D. Conn. Apr. 24, 2013)). Were the rule otherwise, state courts would be stripped of jurisdiction over all manner of cases seeking to enforce their states' laws to protect their citizens simply because the wrongdoing took place on nationwide platforms such as Amazon, Facebook, or eBay. *See* Reply at 7.

Coinbase likewise fails to undermine the well-established system of dual enforcement in securities regulation. Mot. at 9–11; Reply at 8–9. Quoting U.S. Supreme Court precedent, Judge Russo noted that balance "'plainly contemplated the possibility of dual litigation in state and federal courts relating to securities transactions,'" with Congress having specifically preserved the ability of states to regulate the registration of securities such as those at issue here. F&R at 9 (quoting *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 383–84 (1996) and citing *Ciuffitelli for Tr. of Ciuffitelli Revocable Tr. v. Deloitte & Touche LLP*, 2017 WL 2927481, \*18 (D. Or. Apr. 10), *adopted by* 2017 WL 2927150 (D. Or. July 5, 2017)). And while Coinbase continues to appeal to various federal regulatory initiatives and draft legislation being contemplated by Congress, Judge Russo correctly concluded that "Congress has been considering [crypto] legislation for years

but has yet to take any concrete action that could alter the federal-state regulatory balance." F&R at 9. It cannot be said, then, that carrying out this dual enforcement scheme at the state level necessarily implicates federal jurisdiction.

Coinbase also claims that the F&R "ignores that if the Attorney General were successful in establishing that the transactions at issue are 'investment contracts,' that would mean that Coinbase is a national securities exchange subject to the Exchange Act," and that "[t]he regulation of such exchanges is indisputably the province of the federal government." Obj. at 16. But the F&R in fact rejects this faulty argument, which disregards that the State's claim arises under the OSL, not federal securities law, and rehashes Coinbase's incorrect contention that that claim necessarily turns on federal securities law. *See* F&R at 5–8; *see also* Reply at 9–10.

As a result, the F&R correctly concluded that the alleged federal issue here is neither substantial nor required to be litigated in federal court. Rather, "[Oregon]'s strong sovereign interest in enforcing its state laws—and its state-law-created [investment contract test]—in the courts of its own state weighs in favor of remand to its state court system." *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 676 (9th Cir. 2012).

\* \* \*

Because, as Judge Russo found, there is neither a substantial nor necessarily raised federal issue, nor any overriding comity consideration, Oregon's state law claim does not fit within the "special and small category" of cases justifying removal from Oregon state court. *See Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006). The Court should therefore overrule Coinbase's objections and adopt the F&R as to the lack of federal question jurisdiction.

**B.      Judge Russo Correctly Found that Coinbase Fails to Establish Jurisdiction under the Federal Officer Removal Statute.**

In the Ninth Circuit, a private person seeking to remove a case based on federal officer removal jurisdiction "must establish: '(a) it is a person within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and [the] plaintiff's claims; and (c) it can assert a colorable federal defense.'" *San Mateo*, 32 F.4th at 755 (quoting *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981, 986–87 (9th Cir. 2019)). As Judge Russo correctly found, Coinbase fails to make the required showing under the second and third prongs of this test. F&R at 10–18.

As discussed above, the State's amended complaint expressly waives any claim arising from sales by or on behalf of the USMS. First Am. Compl., ECF 18 at ¶ 503. Judge Russo rightly found, that this exclusion extinguishes any possible grounds for federal officer removal by severing any possible causal nexus between that claim and Coinbase's actions on behalf of the USMS. *Id.* at 15–18. While Coinbase continues to insist that a causal connection nevertheless exists, Judge Russo properly rejected this argument and found that it is clearly contradicted by Coinbase's actual contracts with the USMS. *Id.* at 15–16. Coinbase also fails to assert a colorable defense arising out of its purported official duties. *Id.* at 18 n.5.

**1.      Coinbase Failed to Demonstrate a Causal Nexus Between the State's Claim and the Services Coinbase Provides to the USMS.**

To demonstrate the required causal nexus between the services it provides to the federal government and the State's claim, Coinbase must show that (1) it "was 'acting under' a federal officer in performing some 'act under color of federal office,'" and (2) "such action is causally

connected with the [State's] claims against it." *San Mateo*, 32 F.4th at 755 (citing *Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1244–50 (9th Cir. 2017)).[4]

### a.    Judge Russo Correctly Found the State's Waiver Eliminates Any Possible Causal Connection.

To demonstrate a causal connection with the plaintiff's claims, the defendant must show "that the challenged acts 'occurred *because of* what [it] w[as] asked to do by the Government.'" *Goncalves*, 865 F.3d at 1245 (emphasis in original) (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008)). Judge Russo properly concluded that Coinbase made no such showing.

It is well established, and Coinbase does not dispute, that "[w]hen a plaintiff amends her complaint following her suit's removal, a federal court's jurisdiction depends on what the new complaint says." *Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 30 (2025). As the F&R acknowledges, "although the [State's amended complaint] alleges that defendants violated the OSL, it does not assert that defendants did so in connection with any of the services they provided to the USMS," F&R at 16, because the State amended its complaint to "expressly exclude any sale of Crypto Securities . . . by or on behalf of the U.S. Marshals Service. *See* First Am. Compl. at ¶ 503.[5] Coinbase does not contest this finding. Instead, as Judge Russo observed, "defendants argue they have an obligation to maintain their platform and deliver a national, liquid market for the

---

[4] Judge Russo correctly found that the 2022 Prime Broker Agreement and Master Trading Agreement between Coinbase and the USMS "does not create a common-law agency relationship or otherwise require defendants to follow all orders issued by the USMS." F&R at 13. As for the new 2024 "RFP Contract," Judge Russo did not find that the "acting under" prong was met, but rather that, even "presuming the 'acting under' prong is met," Coinbase failed to meet the "causal connection" requirement. *Id.* at 15.

[5] Judge Russo also found that Or. Rev. Stat. Ann. § 59.035(1) exempts any transaction by a marshal from Or. Rev. Stat. Ann. § 59.055, F&R at 17 n.4, which by itself is a persuasive reason to determine that the claims brought by the State are not connected to or associated with Coinbase's actions on behalf of the USMS, *see* Reply at 15. Coinbase does not challenge this finding.

USMS, which plaintiff's 'post-amendment claims' would 'dry up.'" F&R at 16. But, as the F&R finds, this argument fails for multiple reasons.

First, there is no provision in the RFP Contract "suggesting the USMS hired [Defendants] specifically to maintain a certain amount of nationwide liquidity (or, by extension, that would be breached by reducing liquidity from Oregon users)." *See id.* at 17. Rather, the services Coinbase provides to the USMS and its other customers "involve distinct transactions and assets, executed for individual clients," and Coinbase alone "decide[s] which crypto assets are available to trade on [its] platform or to Oregon residents." *Id.* at 16–17. Further, the State's complaint "only 'targets 31 out of the millions of cryptocurrencies that exist; it does not allege that Bitcoin, which comprises the majority of the crypto market's value, is a security,'" nor does it "challenge [Coinbase's] broader operation of its trading platform." *Id.* at 17–18. Finally, as Judge Russo noted, Coinbase's contracts with the USMS explicitly *require* the USMS to comply with securities laws and "any applicable state and federal laws." *Id.*

For these reasons, the State's claim "is separate from the services" Coinbase provides to the USMS, so there is "no causal nexus between defendants' actions" on behalf of the USMS "and plaintiff's claims." *Id.* at 18.

> **b.     The Ninth Circuit's Recent Decision in *Express Scripts* Further Supports Remand.**

Recent Ninth Circuit precedent reaffirms that the State's disclaimer is sufficient to extinguish the purported basis for federal officer removal. In *California by & through Harrison v. Express Scripts, Inc.*, the court considered an attempt by a pharmacy benefits manager to remove an opioids-related public nuisance claim to federal court on the grounds that the defendant had contracts with federal agencies. No. 24-1972, 2025 WL 2586648, at *2 (9th Cir. Sept. 8, 2025).

Plaintiff waived any claim based on defendant's federal contracts, but defendant argued that removal was proper despite the disclaimer because all its clients' business interests were intertwined. *Id.* at *3.

The Ninth Circuit rightly disagreed. As that court explained, if "[p]laintiff, as 'the master of the complaint' . . . renounces the portions of its claims that implicate actions taken pursuant to or in relation to directions from a federal officer, then a defendant is not entitled to 'a federal forum' in which 'to raise a defense arising out of his official duties.'" *Id.* at *4, 7. There, because the plaintiff "excised the basis for federal jurisdiction with its disclaimer, which made remand necessary," the defendant failed to satisfy the causal nexus prong of the removal statute, as such a disclaimer "prevents [d]efendants from demonstrating that [p]laintiff's claims are causally related to any actions [d]efendants allege were taken under federal direction, as required by 28 U.S.C. § 1442(a)(1)." *Id.* at *4. In so doing, the court held it had no obligation to credit defendant's "incorrect" interpretation of the law nor its "implausible reading of [p]laintiff's amended complaint." *Id.*

Defendants attempt to distinguish this new authority by recycling arguments that Judge Russo properly rejected. For example, Defendants argue that their "federal and non-federal work are not just similar or parallel but rather part and parcel of the same essential nationwide marketplace." Obj. at 26, n.18. But, as discussed above, the F&R correctly found that "defendants' actions involve distinct transactions and assets, executed for individual clients," and so they are divisible. F&R at 16 (citing record evidence that Government funds are segregated and not comingled); *see also Express Scripts*, 2025 WL 2586648, at *12 (finding that "[d]efendants' federal and non-federal work is divisible and can be analyzed independently"). Moreover, as the Ninth Circuit explained, the Court is not required to credit Defendants' broad overreading of the

State's complaint, nor their self-serving characterization of the RFP Contract. *Express Scripts* at *4, 15; *see also* F&R at 16 n.3 ("[D]efendants' 'theory of the case' is simply not viable to the extent it contradicts the express terms of the contract invoked under § 1442(a)(1)."); *Plaquemines Par. v. BP Am. Prod. Co.*, 103 F.4th 324, 339 (5th Cir. 2024) ("[C]ourts look to the contents of the relevant federal contracts in determining whether the challenged conduct was 'connected or associated with' acts taken under color of federal office.").

### c.    Defendants' Other Critiques of the F&R Fall Flat.

While Defendants attack the F&R for citing *Plaquemines* as persuasive authority, they fail to cite a single Ninth Circuit case to support their claim that the Ninth Circuit has "rejected" *Plaquemines*' approach. *See* Obj. at 25. And their position that the case is an "outlier" is incorrect. In fact, the two out-of-circuit cases they contend contradict *Plaquemines*, *see* Obj. at 25–26, are consistent with the Fifth Circuit's holding in *Plaquemines*: In the wake of Congress' 2011 amendment to the federal officer statute, all three circuits ask whether there is a "connection or association" between plaintiff's claims and defendant's federal work rather than requiring but-for causation. *Compare In re Commonwealth's Motion to Appoint Couns. Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 470–72 (3d Cir. 2015) *with Sawyer* v. *Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017)) *and Plaquemines*, 103 F.4th at 336. The Ninth Circuit has adopted the same "connection or association" test, favorably citing a related Fifth Circuit case. *See DeFiore v. SOC LLC*, 85 F.4th 546, 557 n.6 (citing *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc)).

Moreover, the issues presented in *In re Commonwealth's Motion* and *Sawyer* are easily distinguished from the issue presented here. In *In re Commonwealth's Motion*, the Third Circuit held that a claim that the respondent was "violating the federal authority granted to it" was

"undoubtedly" connected to "acts taken under color of federal office." 790 F.3d at 472. And the Fourth Circuit held in *Sawyer* that the defendant's alleged failure to warn the shipbuilders who assembled its boilers about the dangers of asbestos was "clearly related to [defendant's] performance of its contract with the Navy" because "the Navy dictated the content of warnings on [defendant's] boilers, and [defendant] complied with the Navy's requirements." 860 F.3d at 258. Here, the State does not allege that Coinbase violated its authority under its contracts with the USMS and Coinbase points to no requirement imposed on it by the USMS, in its contracts with the USMS or otherwise, to execute sales of the Crypto Securities at issue to Oregon residents on behalf of clients other than the USMS.

Defendants appear to quibble with *Plaquemines*' further holding that a court must look to the language of a party's contract with the federal government to identify if the conduct complained of was "connected or associated with" federal office, as opposed to extra-contractual sources like "federal regulations, guidance, or expectations." 103 F.4th at 338–39.[6] But this does not make *Plaquemines* an "outlier" or somehow contrary to Ninth Circuit precedent.[7] Indeed, in

---

[6] To the extent Defendants contend that *Plaquemines* is inconsistent with *DeFiore*, they are wrong. In *DeFiore*, the contract at issue expressly incorporated a federal regulation into its terms. 85 F.4th at 560.  And while Defendants also claim that footnote 7 of *DeFiore* holds that a "security contractor did not need to identify provisions in federal contract that compelled [the] conduct at issue," Obj. at 25, the footnote says no such thing. Rather, it expounds on the "under color" requirement of the removal statute, and the showing a removing defendant must make to satisfy that prong. *DeFiore*, 85 F.4th at 558 n.7.

[7] Indeed, even the amicus brief that Defendants cite does not argue that a circuit split exists. See Obj. at 26. And Defendants' speculation that the Supreme Court will reverse *Plaquemines* is not the law, and this Court should decline the invitation to prognosticate about future decisions. *See e.g.*, *Ritter v. Thigpen*, 828 F.2d 662, 665–66 (11th Cir. 1987) ("A grant of certiorari does not constitute new law."). Moreover, even if the Supreme Court were to find that the Fifth Circuit misapplied the "connected or associated with" test in *Plaquemines*, remand would still be appropriate here because Coinbase fails to identify any federal directive requiring it to sell or

---

*DeFiore*, the court found a nexus between the act complained of and federal work because plaintiff security guards alleged that they were forced to work hours in excess of the limits set in their contract with the Department of Defense. 85 F.4th at 557–58. And other courts have analyzed the terms of a defendant's contract with the federal government to determine whether the causal nexus requirement was met. *See Bennett v. MIS Corp.*, 607 F.3d 1076, 1087–88 (6th Cir. 2010) (closely analyzing terms of relevant federal contractor agreements). In any event, unlike the defendants in *Plaquemines* who argued that they acted pursuant to "federal directives" set forth in "various federal regulations, designations, and reports," 103 F.4th at 338, Coinbase points to no relevant federal directive and relies instead on its self-serving characterization of its contracts with the USMS.

In sum, the Court should reject Defendants' unfounded argument that Judge Russo erred and failed to follow Ninth Circuit precedent by favorably citing *Plaquemines* for the proposition that the Court need not credit a "theory of the case" that is contradicted by the terms of Coinbase's contracts with the USMS.

Defendants also suggest that the F&R adopts the view that federal courts lack jurisdiction under § 1442 "so long as any aspect of [the defendant's] federal duties remained untouched by state litigation." Obj. at 28. But Judge Russo found no such thing. Rather, Judge Russo correctly found that remand is appropriate because the State's claim does not touch on Coinbase's actions on behalf of the USMS. F&R at 18. The fact that Coinbase may continue to sell the Crypto Securities in Oregon on behalf of the USMS, generally continue to operate its platform in Oregon,

---

facilitate the sale of Crypto Securities to Oregon residents on behalf of clients other than the USMS.

and continue to provide the USMS with the services for which it actually contracted is simply further evidence that the State's claim does not impede Coinbase's ability to meet its obligations to the USMS and is not otherwise connected or associated with Coinbase's actions on behalf of the USMS.

* * *

For all these reasons, the F&R correctly concluded that the Complaint waived any claim based on conduct with a nexus to Defendants' federal conduct, mandating remand under controlling precedent.

### 2. Judge Russo Was Correct in Finding that Coinbase Fails to Assert a Colorable Defense Arising from Its Contacts with the USMS.

#### a. Defendants' Personal Jurisdiction and Due Process Defenses Do Not Relate to Their Federal Work, and Are Not Colorable.

The federal officer removal statute only confers jurisdiction over cases where federal officers can raise a colorable defense that "aris[es] out of [their] official duties." *City & Cnty. of Honolulu v. Sunoco LP*, 39 F.4th 1101, 1110 (9th Cir 2022) (quoting *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981)). As such, the F&R appropriately found that three of Defendants' asserted defenses—personal jurisdiction, failure to state a claim (which Coinbase styles its "investment contracts" defense), and Due Process—"do not support removal because they do not depend on whether defendants were acting under the direction of the USMS." F&R at 18 n.5; *see also* Mot. at 19–25; Reply at 23–27. Defendants' objections barely address this fundamental issue. For instance, Defendants summarily assert that they "will rely on the existence of [their USMS] agreements" as a basis for their Due Process defense, without explaining how the defense "arises

out of" the mere existence of the agreements. *See* Obj. at 31. The F&R correctly set aside these arguments.[8]

### b.    Defendants' Preemption and Supremacy Clause Defenses Are Not Colorable.

With respect to Defendants' Supremacy Clause defenses, Defendants claim that the F&R "does not address whether these defenses are colorable." Obj. at 29. That is false. Judge Russo explicitly rejected both preemption and intergovernmental immunity as colorable defenses:

> [T]he Court reiterates that USMS transactions are exempted from Or. Rev. Stat. § 59.055. And, as observed in Section I, state and federal securities regulation may co-exist, and nothing in the Asset Forfeiture Program evinces an intent to override state laws regulating the sale of certain property seized by the federal government. Finally, the fact that the underlying action may indirectly increase the federal government's costs by "impair[ing] the liquidity and scale . . . that is key to [defendants'] performance" does not appear sufficient to invoke the Supremacy Clause. … *see also Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 760 (9th Cir. 2022) ("numerous cases distinguish for purposes of intergovernmental immunity between regulations of federal contractors that merely increase the federal government's costs, like taxes, and regulations that would control federal operations").

F&R at 18 n.5.

Setting aside that Defendants already conceded the lack of basis for its preemption defense, *see* Reply at 29 n.20, Judge Russo is correct. Defendants continue to rely on *Geo Group*, arguing that the State "seeks to 'control' the federal government's law enforcement operations" by

---

[8] While Judge Russo did not need to reach the issue, the State also explained how Coinbase's personal jurisdiction, federal securities law, and due process defenses are not colorable. *See* Mot. at 19–22; Reply at 23–27. Coinbase regularly conducts business in Oregon, and there is no colorable argument that Defendants lack minimum contacts with Oregon. Reply at 24–25, 25 n.18. The "investment contracts" defense is not colorable because federal securities law is not binding on Oregon state courts. *See supra* at Section II(a)(1); Reply at 26. And Due Process is not colorable because Coinbase has long been on notice that crypto assets "might be subject to regulation as securities." Reply at 27.

regulating the in-state market. Obj. at 29. But the F&R recognizes that *Geo Group* does not support Defendants' position. F&R at 18 n.5. In fact, as the State has previously explained*, Geo Group* presents a useful contrast, exemplifying the type of state action that constitutes the "same effect as direct enforcement against the Government" thereby implicating the Supremacy Clause, 50 F.4th at 757, 760; *see* Reply at 28–29. No such direct enforcement exists here, so this argument fails.

Defendants' intergovernmental immunity defense is further not viable because the OSL is a facially neutral law that neither directly regulates nor discriminates against the federal government. As the F&R recognized, the fact that a neutral state law may impose incidental burdens or costs on the federal government does not give rise to an intergovernmental immunity defense without discriminatory conduct. *See Geo Grp*, 50 F.4th at 755 ("[A] state law is [not] unconstitutional just because it indirectly increases costs for the Federal Government, so long as the law imposes those costs in a neutral, nondiscriminatory way.") (quoting *United States v. Washington*, 596 U.S. 832, 839 (2022)); *United States v. California*, 921 F.3d 865, 880 (9th Cir. 2019) (distinguishing intergovernmental immunity, which "attaches only to state laws that discriminate against the federal government and burden it in some way," from obstacle preemption). Intergovernmental immunity is plainly not colorable under these precedents.

Likewise, Defendants have identified no "obstructive, not-insignificant burden on federal activities" imposed by the OSL, so they fail to make out a colorable obstacle preemption defense. *California*, 921 F.3d at 880. As the F&R notes, the OSL in fact exempts transactions carried out by marshals from its reach. *See* Or. Rev. Stat. § 59.035(1); F&R at 17 n.4. Obstacle preemption requires that "compliance with both federal and state regulations is a physical impossibility," or that the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *California*, F.3d at 879. But the F&R correctly found that "state and

federal securities regulation may co-exist," citing its discussion of how Oregon courts are not bound by federal securities law as to the definition of an investment contract under the OSL. F&R at 18 n.5, 5–9. While Defendants summarily assert that Plaintiff seeks to "'control' the federal government's law enforcement operations" by enforcing the OSL (Obj. at 29), those conclusory statements "offer no specifics as to how the OSL 'directly burdens' or 'controls' the federal government." Reply at 28. That is fatal to their preemption and Supremacy Clause defenses.[9]

### III.    CONCLUSION

The Court should adopt Judge Russo's Findings and Recommendation, grant the State's motion, and remand this case for adjudication in Multnomah County Circuit Court.

---

[9] In support of their assertion that the Asset Forfeiture Program "evinces an intent to override state law,"—an argument that Coinbase did not raise before the magistrate, and therefore waived— Defendants offer a misleading partial quote of 21 U.S.C. § 903. *See* Obj. at 30. This provision, which is related to drug enforcement, preempts state law where there is a "positive conflict." *See* 21 U.S.C. § 903. But Section 903 read in its entirety makes clear that it imposes no express, field, or conflict preemption where, as here, state and federal regulation co-exist (and Coinbase's USMS contracts explicitly call for complying with state laws and securities laws):

> No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

RESPECTFULLY SUBMITTED this 10th day of October, 2025.

> Dan Rayfield
> Attorney General
>
> BRIAN A. DE HAAN, OSB#155251
> Senior Assistant Attorney General
> Oregon Department of Justice
> 100 SW Market Street
> Portland, OR 97201
> Tel.: 971-673-1880
> Fax: 971-673-1888
> Email:  brian.a.dehaan@doj.oregon.gov
>
> *Of Attorneys for Plaintiff*
>
> *s/ Keil M. Mueller*
> Keil M. Mueller, OSB No. 085535
> Jennifer S. Wagner, OSB No. 024470
> Yoona Park, OSB No. 077095
> Norjmoo Battulga, OSB No. 242037
> **KELLER ROHRBACK L.L.P.**
> 601 S.W. Second Avenue, Suite 1900
> Portland, OR 97204
> (971) 253-4600
> Fax (206) 623-3384
> Email:  kmueller@kellerrohrback.com
>        jwagner@kellerrohrback.com
>        ypark@kellerrohrback.com
>        nbattulga@kellerrohrback.com

Julie G. Reiser (Admitted *pro hac vice*)
Margaret (Emmy) Wydman (Admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS**
 **& TOLL PLLC**
1100 New York Avenue, N.W., Suite 800
Washington, D.C. 20005
Tel.: (202) 408-4600
Fax: (202) 408-4699
Email:  jreiser@cohenmilstein.com
      ewydman@cohenmilstein.com

Christopher J. Bateman (Admitted *pro hac vice*)
**COHEN MILSTEIN SELLERS**
 **& TOLL PLLC**
88 Pine St., 14th Floor
New York, NY 10005
Tel.: (212) 838-7797
Fax: (212) 838-7745
Email:  cbateman@cohenmilstein.com

*Special Assistant Attorneys*
*General for Plaintiff*